# BURNET, COMMISSIONER OF INTERNAL REVENUE, *v.* CHICAGO PORTRAIT CO.

No. 378.   Argued January 20, 21, 1932.—Decided February 23, 1932.

1

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Whitney North Seymour, Sewall Key,* and *Andrew D. Sharpe* were on the brief, for petitioner.

*Mr. Arnold R. Baar,* with whom *Mr. Albert L. Hopkins* was on the brief, for respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

This proceeding was brought for the redetermination of a deficiency in income tax for the year 1923. The respondent, Chicago Portrait Company, is an Illinois corporation with its principal place of business at Chicago. It owned 51 per cent. of the capital stock of the International Art Company of Sydney, Australia, a foreign corporation. Respondent received dividends from the International Art Company and sought credit for a proportionate part of the income taxes paid by that corporation to the Commonwealth of Australia, to the State of New South Wales, and to the Dominion of New Zealand. Section 238 (e) of the Revenue Act of 1921 (42 Stat. 227, 258, 259) permitted credit in the case of such taxes paid "to any foreign country." Credit was allowed on account of the income taxes paid to the Commonwealth of Australia and to the Dominion of New Zealand but was refused as to those paid to the State of New South Wales. The Board of Tax Appeals held that the respondent was entitled to the credit with respect to the last mentioned taxes also, and the Circuit Court of Appeals affirmed that decision. 16 B. T. A. 1129; 50 F. (2d) 683. This Court granted a writ of certiorari.

The sole question is whether New South Wales is a "foreign country" within the meaning of the applicable statute.[1]

---

[1] The provisions of § 238 (a) and (e) of the Revenue Act of 1921 are as follows:

"Sec. 238 (a) That in the case of a domestic corporation the tax imposed by this title, plus the war-profits and excess-profits taxes, if any, shall be credited with the amount of any income, war-profits, and excess-profits taxes paid during the same taxable year to any foreign country, or to any possession of the United States: *Provided,* That the amount of credit taken under this subdivision shall in no case exceed the same proportion of the taxes, against which such credit is taken, which the taxpayer's net income (computed without deduction

The word "country," in the expression "foreign country," is ambiguous. It may be taken to mean foreign territory or a foreign government. In the sense of territory, it may embrace all the territory subject to a foreign sovereign power. When referring more particularly to a foreign government, it may describe a foreign State in the international sense, that is, one that has the status of an international person with the rights and responsibilities under international law of a member of the family of nations;[2] or it may mean a foreign government which has authority over a particular area or subject-matter, although not an international person but only a component part, or a political subdivision, of the larger

---

for any income, war-profits, and excess-profits taxes imposed by any foreign country or possession of the United States) from sources without the United States bears to its entire net income (computed without such deduction) for the same taxable year. . . .

"(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: *Provided*, That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. The term 'accumulated profits' when used in this subdivision in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; . . ."

[2] Oppenheim, Internat. L., 4th ed., vol. I, §§ 63, 64, pp. 133–135; Hyde, Internat. L., vol. 1, §§ 6–8, pp. 15–18; Moore, Internat. L. Dig., vol. I, pp. 14–18.

6

international unit.[3]  The term " foreign country " is not a technical or artificial one, and the sense in which it is used in a statute must be determined by reference to the purpose of the particular legislation.[4]

In the case of tariff acts, this Court said in *Stairs* v. *Peaslee*, 18 How. 521, 526, that the word " country " has always been construed " to embrace all the possessions of a foreign State, however widely separated, which are subject to the same supreme executive and legislative control." See, also, *United States* v. *The Ship Recorder*, 1 Blatchf. 218, 225–227; *Campbell* v. *Barney*, 5 Blatchf. 221. Accordingly, in construing the Act of March 3, 1851 (9 Stat. 629, 630) providing that imported merchandise should be appraised at its market value " at the principal markets of the country " from which it had been imported, the Court held that a commodity shipped from Halifax, Nova Scotia, should be appraised according to the value in the principal markets under the British rule, and these were found, in fact, to be London and Liverpool. After the ratification of the Treaty of Peace between the United States and Spain, Porto Rico and the Philippines ceased to be " foreign country " under the tariff laws. *De Lima* v. *Bidwell*, 182 U. S. 1; *Fourteen Diamond Rings* v. *United States,* 183 U. S. 176, 179. It followed that the term " other countries " in the Commercial Convention with Cuba of 1903 (33 Stat. 2136, 2140) did not include the Philippine Islands. *Faber* v. *United States,* 221 U. S. 649, 658. Under the provisions of the Platt Amendment and the Constitution of Cuba, the Isle of Pines was *de facto* under the jurisdiction of Cuba and hence remained " foreign country " within the meaning of the Tariff Act of 1897 (30 Stat. 151). *Pearcy* v. *Stranahan,* 205 U. S. 257, 265.

---

[3] See Dicey, Conflict of Laws, 4th ed., pp. 59, 60.

[4] *Wayman* v. *Southard*, 10 Wheat. 1, 29; *Marriott* v. *Brune,* 9 How. 619, 635, 636; *American Tobacco Co.* v. *Werckmeister*, 207 U. S. 284, 293; *United States* v. *Louisville & N. R. Co.,* 236 U. S. 318, 333; *Inter-Island Steam Nav. Co.* v. *Ward*, 242 U. S. 1, 4; *Porto Rico Ry., L. & P. Co.* v. *Mor*, 253 U. S. 345, 348.

In construing legislation providing for the deportation of aliens " to the country whence they came," the place of emigration affords the dominant consideration. Thus, under the Immigration Act of 1917 (39 Stat. 874, 890) the Court held that an alien emigrating from Grodno, then a part of Russia, was properly deported to Poland, because at that time Grodno was a part of Poland. " The term country," said the Court, was used in the statute " to designate, in general terms, the state which, at the time of deportation, includes the place from which the alien came." *Mensevich* v. *Tod*, 264 U. S. 134, 136, 137. The evident purpose of the statute determined the significance to be attached to the expression.

In the instant case, the question is one of credit for income taxes " paid to any foreign country." The word " country " is manifestly used in the sense of government. And to decide what government fits the description, whether only that of a foreign power which may be considered an international person, or that of a political entity which, although not an international person, levies and collects income taxes which may be the subject of the intended credit, it is necessary to consider the object of the enactment and to construe the expression " foreign country " so as to achieve, and not defeat, its aim. We think that the purpose of the statute is clear. The fact that the provision is for a credit to the domestic corporation, against income taxes payable here, of income taxes " paid during the same taxable year to any foreign country," itself demonstrates that the primary design of the provision was to mitigate the evil of double taxation. Cognate provisions in the case of individuals disclose a similar intent. Section 222 (a)[5] of the same Revenue

[5] " Sec. 222. (a) That the tax computed under Part II of this title shall be credited with:

"(1) In the case of a citizen of the United States, the amount of any income, war-profits and excess-profits taxes paid during . the

Act (1921) provides that the income tax, in the case of a citizen of the United States, should be credited with the amount of any income taxes "paid during the taxable year to any foreign country or to any possession of the United States." In the case of an alien resident of the United States, the credit is conditioned upon reciprocal treatment. The resident alien is to be credited with "the amount of any such taxes paid during the taxable year to any foreign country, if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country." 42 Stat. 249.[6]

taxable year to any foreign country or to any possession of the United States; and

"(2) In the case of a resident of the United States, the amount of any such taxes paid during the taxable year to any possession of the United States; and

"(3) In the case of an alien resident of the United States, the amount of any such taxes paid during the taxable year to any foreign country, if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country; . . ."

[6] With respect to the allowance of such credits, as distinguished from deductions from gross income in computing net income, the Committee on Ways and Means of the House of Representatives in its report on the Revenue Bill of 1918 (H. R. Rep. No. 767, 65th Cong., 2d sess., p. 11), said: "Under existing law a citizen of the United States can only deduct income, war or excess profits taxes paid to a foreign country from gross income in computing net income. With the corresponding high rates imposed by certain foreign countries the taxes levied in such countries in addition to the taxes levied in the United States upon citizens of the United States place a very severe burden upon such citizens. The bill provides that a credit against the income tax imposed in the United States be allowed a citizen of the United States subject to income and war or excess profits taxes in a foreign country of an amount equal to the tax paid in such country upon income that is received from sources within such country. The bill further provides that, in the case of an alien resident of the United States who is a citizen or subject of a country which imposes income, war profits, or excess profits taxes, a like

In the case of domestic corporations, the purpose is also disclosed to facilitate their foreign enterprises. The provision of § 238 (e) of the Revenue Act of 1921 indicates appreciation of the practical exigencies which lead to the foreign incorporation of subsidiaries for the extension by domestic corporations of their business abroad. This clearly appears to be the reason for the allowance by that Act of a credit to a domestic corporation, against its income tax here upon dividends received from its foreign subsidiary, of a proportionate part, as defined, of the income taxes paid by that subsidiary to " any foreign country." [7] The same provision applies to subsidiaries with

credit shall be allowed if such country allows a similar credit to citizens of the United States resident in such country."

The Conference Report on the Revenue Bill of 1918 (H. R. Rep. No. 1037, 65th Cong., 3d sess., p. 53), contains the following statement: "Amendment No. 118: The House bill provided that a citizen of the United States might credit against his income tax the amount of any income, war-profits, and excess-profits taxes paid to any foreign country, Porto Rico, or the Philippine Islands, upon income derived from sources therein, and allowed a similar credit to an alien resident if his country makes reciprocal provisions. The Senate amendment entirely rewrites the section and broadens it to include a credit for taxes paid to any possession of the United States, which is also to be given to an alien resident of the United States. The House recedes with an amendment providing that if any deduction is allowed for taxes accrued in any possession or foreign country, the commissioner may require the taxpayer to give a surety bond providing for the payment of any tax found to be due the Government in case too great a deduction shall be allowed for accrued taxes in our possessions or any foreign country. . . ."

[7] In the Report of the Committee on Ways and Means of the House of Representatives in relation to the Revenue Bill of 1921 (H. R. Rep. No. 350, 67th Cong., 1st sess., p. 8), the following statement was made with respect to American concerns doing business in foreign countries: " Under existing law an American citizen or domestic corporation is taxed upon his or its entire income even though all of it is derived from business transacted without the United States. This results in double taxation, places American business concerns at a serious disadvantage in the competitive struggle for foreign trade, and

respect to income taxes paid " to any possession of the
United States."

In effectuating these purposes, it is manifest that the
controlling consideration was the fact that the income
tax was paid to a foreign government competent to lay
the tax, and not the international status of that govern-
ment. The burden upon the domestic corporation was
the same whether the foreign government had interna-
tional standing or was a lesser political entity which nev-
ertheless had authority to impose the exaction upon the
corporation or its subsidiary. And if credit was to be
allowed here by reason of the payment of the income tax
abroad, it made no difference to the Government of the
United States whether the payment abroad was made to
the one sort of foreign government or the other. The
reasons underlying the allowance of the credit were ap-
plicable in either case.

An examination of the provisions of earlier income tax
acts in which the expression " foreign country " is found,
does not support, but rather negatives, the conclusion
that the term was used in the restricted sense for which
the petitioner contends. In the Corporation Tax Act of

---

encourages American corporations doing business in foreign countries
to surrender their American charters and incorporate under the laws
of foreign countries." While this statement was made to introduce a
remedial proposal, which was not adopted, it discloses the purpose
entertained. See, also, Report of Committee of Finance of the Sen-
ate (Sen. Rep. No. 275, 67th Cong., 1st sess., p. 9).

The Conference Report on the Revenue Bill of 1921 (H. R. Rep.
486, 67th Cong., 1st sess., p. 38), contains the following: "Amend-
ment No. 436: The House bill provided for the exclusion from income
of all dividends received from a corporation. Senate amendments
agreed to by the conferees having provided for the inclusion in gross
income of certain dividends received from a foreign corporation, Sen-
ate amendment No. 436 provides, under proper safeguards, for the
credit by a domestic corporation of taxes paid by its subsidiary for-
eign corporation with respect to the income or profits of the foreign
corporation paid as taxable dividends to the domestic corporation;
and the House recedes."

1909 (36 Stat. 113) deduction from gross income was allowed to the corporation for all sums paid by it within the year for taxes " imposed by the government of any foreign country as a condition to carrying on business therein." That corporation tax was an excise on the privilege of doing business in a corporate capacity. The provision with respect to taxes laid by a foreign government manifestly referred to that government which, as the statute said, imposed a privilege tax. There was no suggestion that the foreign government laying the tax must have an international status; it was enough that it had authority to require the payment " as a condition to carrying on business." In the Income Tax Act of 1913, Paragraph G (b), 38 Stat. 173, deduction was allowed, in computing net income of a corporation, of " all sums paid by it within the year for taxes imposed under the authority of the United States or of any State or Territory thereof, or imposed by the Government of any foreign country." The Income Tax Act of 1916, §§ 5 (a), 6 (a) and 12 (a), 39 Stat. 759, 769, provided for deduction from gross income of " Taxes paid within the year imposed by the authority of the United States, or its Territories, or possessions, or any foreign country, or under the authority of any State, county, school district, or municipality, or other taxing subdivision of any State, not including those assessed against local benefits." The Income Tax Amendments of 1917, §§ 1201 (1), 1207 (1), 40 Stat. 330, 335, continued the provisions for deductions as to taxes imposed " by the authority " of " any foreign country " in obviously the same sense.[8]

---

[8] These provisions in the Act of 1917 read: " Taxes paid within the year imposed by the authority of the United States (except income and excess profits taxes), or of its Territories, or possessions, or any foreign country, or by the authority of any State, county, school district, or municipality, or other taxing subdivision of any State, not including those assessed against local benefits."

There appears to be no room for the conclusion that, under these Acts, the deductions for taxes paid abroad were available only if paid to a foreign government that had an international standing, and not if paid to a foreign government which, although not having that standing, was still authorized to exact the taxes. The criterion was the fact that the tax was imposed by the authority of a foreign country and not the international status of the particular government to which it was paid. We have not been referred to any opposing administrative construction of these Acts.[9]

The Revenue Act of 1918, with its provisions for credits, against income taxes laid here, of taxes paid " to any foreign country, upon income derived from sources therein," §§ 222 (a), 238 (a); 40 Stat. 1073, 1080,[10] was

[9] On the contrary, Treasury Regulations No. 33, Revised (issued in January, 1918, applicable to the Income Tax Acts of 1916 and 1917) had the following provision in Article 8 with respect to the deductions allowed to citizens and resident aliens for taxes paid abroad: " Taxes: State or any political subdivision thereof, Federal or foreign (except income and excess profits taxes paid to the United States), and not including taxes assessed against local benefits."

The provision of these regulations as to the taxes deductible in cases of corporations, had the same import.

This provision was as follows: "Art. 191. *Taxes deductible.*—Taxes imposed against a corporation by authority of the United States (except income and excess-profits taxes) its territories or any foreign country, or by authority of any State, county, school district, municipality, or other taxing subdivision of a State (not including those assessed against local benefits) and paid within the year for which the return is made, are deductible from the gross income of a domestic corporation."

[10] These provisions as to individuals were as follows:

" Sec. 222 (a). That the tax computed under Part II of this title shall be credited with:

"(1) In the case of a citizen of the United States, the amount of any income, war-profits and excess-profits taxes paid during the tax-

enacted with this background and we find no basis whatever for the conclusion that the term " foreign country " was used in that statute in any different sense. In the Act of 1918, the provisions for deductions from gross income, in computing net income, by citizens or residents, and by domestic corporations, of taxes paid to a foreign country, were continued as in the prior acts, save that there was excepted from these deductions the amount of the credits now allowed to citizens and residents under § 222 and to domestic corporations under § 238 (40 Stat. 1067).[11] In these provisions for deductions, the expres-

---

able year to any foreign country, upon income derived from sources therein, or to any possession of the United States; and

"(2) In the case of a resident of the United States, the amount of any such taxes paid during the taxable year to any possession of the United States; and

"(3) In the case of an alien resident of the United States who is a citizen or subject of a foreign country, the amount of any such taxes paid during the taxable year to such country, upon income derived from sources therein, if such country, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country; . . ."

And with respect to domestic corporations:

" Sec. 238 (a). That in the case of a domestic corporation the total taxes imposed for the taxable year by this title and by Title III shall be credited with the amount of any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States. . . ."

[11] These provisions for deductions in the Revenue Act of 1918 were: " Sec. 214 (a) . . . (3). Taxes paid or accrued within the taxable year imposed (a) by the authority of the United States, except income, war-profits and excess-profits taxes; or (b) by the authority of any of its possessions, except the amount of income, war-profits and excess-profits taxes allowed as a credit under section 222; or (c) by the authority of any State or Territory, or any county, school district, municipality, or other taxing subdivision of any State or Territory, not including those assessed against local benefits of a kind

sion " foreign country " undoubtedly had the same meaning that it had in the prior income tax acts.[12] It will be observed that taxes paid to the States of the Union, or to their political subdivisions, were deductible from gross income.[13] But in the provisions introduced in the Act of 1918 for credits against income taxes, such taxes paid to the States of the Union, and to their political subdivisions, were not included.[14] This fact does not affect the present question, for credits were allowed in the case of income taxes paid to foreign countries, and the provision as to such countries was the same in the section relating to credits as in that with respect to deductions. The slight difference in phraseology in §§ 222 and 238 as to credits for taxes paid " *to* any foreign country," instead of taxes imposed " *by the authority of* any foreign country," as in §§ 214 (a) and 234 (a)[15] is not important. As the context plainly shows, both phrases were intended to convey the same meaning. Thus § 234 (a) (3) (d) provides for deduction, in computing the net income of

tending to increase the value of the property assessed; or (d) in the case of a citizen or resident of the United States, by the authority of any foreign country, except the amount of income, war-profits and excess-profits taxes allowed as a credit under section 222; . . ."

Section 234 (a) (3) (d) provided for a similar deduction of taxes paid by a domestic corporation, excepting from such deductions the credits allowed under section 238.

[12] Treasury Regulations No. 45, under the Revenue Act of 1918, thus described these deductions: "Art. 131. *Taxes.*—Federal taxes (except income, war profits and excess profits taxes), State and local taxes (except taxes assessed against local benefits of a kind tending to increase the value of the property assessed), and taxes imposed by possessions of the United States or by foreign countries (except the amount of income, war profits and excess profits taxes allowed as a credit against the tax), are deductible from gross income. . . .". See, *supra,* note 9.

[13] *Supra,* note 11.

[14] *Supra,* note 10.

[15] *Supra,* note 11.

a domestic corporation, of the taxes imposed " by the authority of any foreign country, except the amount of income, war-profits and excess-profits taxes allowed as a credit under section 238." The distinction made with respect to income taxes paid to the States of the Union, and to their political subdivisions, between deductions from gross income and credits against taxes, simply reflected the economic policy adopted in making allowances for taxes paid within the borders of continental United States and the organized territories. In relation to income taxes paid outside these borders, the provision as to credits was enacted to give greater and not less relief. Not only was the same expression as to foreign countries used in the section as to credits against income taxes as had been employed, and was still continued, as to deductions from gross income, but that the reference was not to a government having an international status was indicated by the provision for similar credits in cases of income taxes paid to " any possession of the United States."[16] And that the dominant thought in the mind of the Congress was to allow a credit for income taxes paid in any foreign country, whenever imposed by the authority of a foreign government, is shown in the reports, above cited, of the committees in connection with the Revenue Bill of 1918.[17]

No change, or qualification, was made in the use of the term " foreign country " in the Revenue Act of 1921,[18] and we think it must be regarded as having the same significance as it unquestionably had through the series of the prior income tax acts to which we have referred. The same controlling purpose is manifest, and the credit provision, here in question, in relation to taxable dividends

---

[16] See §§ 222 (a) and 238 (a) of the Revenue Act of 1918; *supra,* note 10.

[17] *Supra,* note 6.

[18] *Supra,* notes 1 and 5.

from foreign subsidiaries of domestic corporations was introduced not to narrow that purpose but to carry it out more effectively.[19]

The present controversy has arisen under the Treasury Regulations adopted with respect to the Revenue Acts of 1918 and 1921 as to credits.[20] The familiar principle is invoked that great weight is attached to the construction consistently given to a statute by the executive department charged with its administration. *United States* v. *Jackson,* 280 U. S. 183, 193. But the qualification of that principle is as well established as the principle itself. The Court is not bound by an administrative construction, and if that construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons. *United States* v. *Missouri Pacific R. Co.,* 278 U. S. 269, 280. See, also, *United States* v. *Dickson,* 15 Pet. 141, 161; *United States* v. *Healey,* 160 U. S. 136, 145; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *McCaull-Dinsmore Co.,* 253 U. S. 97, 99. Moreover, ambiguous regulations are of little value in resolving statutory ambiguities. In the Preliminary Edition of Treasury Regulations No. 45 under the Act of 1918, Article 382 relating to credits stated: " ' Foreign country ' means any governmental authority, not that of the United States or any part or possession thereof, having power to impose such taxes, and it therefore includes a self-governing colony, such as the Dominion of Canada." But this provision was shortly superseded in the amended Regulations No. 45, promulgated

---

[19] See reports of committees in relation to the Revenue Bill of 1921, *supra,* note 7.

[20] So far as deductions of taxes from gross income, in computing net income, are concerned, the regulation under the Act of 1918 was continued under that of 1921. Treasury Regulations No. 62, Art. 131; see, *supra,* note 12.

April 17, 1919, by a new Article 382 containing the following: "'Foreign country' includes within its meaning any foreign sovereign state or self-governing colony (for example, the Dominion of Canada), but does not include a foreign municipality (for example, Montreal) unless itself a sovereign State (for example, Hamburg). 'Any possession of the United States' includes, among others, Porto Rico, the Philippines and the Virgin Islands." The Department thus sought to introduce a qualification as to the significance of 'foreign country' not found in the words of the statute, or in those of the preceding income tax acts, or in departmental regulations under them, and one that was inconsistent with the apparent purpose of the enactment. It was a qualification which not only did not conform to the view that the expression 'foreign country' was limited to a foreign State having the status of an international person under international law, but, on the other hand, afforded no definite criterion. Its phrase 'self-governing colony' had no certain application, as there are colonies with varying degrees of self-government, and if, in view of the aim of the statute, it was important to draw a distinction with respect to self-government, it would appear that the particular phase of autonomy that was relevant to the purpose of the statute was the competency to impose income taxes upon the domestic corporation, or its foreign subsidiary, with respect to which the relief was granted. It is true that certain foreign political divisions which formerly had not had an international status were achieving it; but even that progress, at the time of the adoption of the regulation in 1919,[21] was still uncertain both as to the quality and extent of the international recognition which would be accorded, and, however im-

---

[21] See Oppenheim, International Law, 4th ed., vol. 1, §§ 63, 94a, 94b.

18

portant in other relations that progress might be, it was not the concern of this statute, and its operation cannot be deemed to depend upon it. The departmental regulation became the more ambiguous as it proceeded with its illustrations relating to municipalities.

By § 216 (e) of the Revenue Act of 1918, a nonresident alien individual was allowed credits for personal exemptions and for dependents if the 'country' of which he was a citizen or subject allowed a similar credit to citizens of the United States not residing in 'such country.' Article 307 of Regulations No. 45 gave a list of 'countries' which satisfied the credit requirements of this provision. This list was amended in later editions of these regulations, applicable to the Revenue Act of 1918, and embraced a great variety of 'countries,' including, for example, British Honduras, Ceylon, Cyprus, Fiji Islands, Gibraltar, Gold Coast, Malay States, Mauritius, St. Kitt-Nevis, etc.[22] As already noted, the expression 'foreign

[22] See Article 307, Treasury Decisions, vol. 21, p. 245; vol. 23, p. 444; vol. 24, p. 118. As finally amended, the Article was as follows:

"Art. 307. *When nonresident alien individual entitled to personal exemption.*—(a) The following is an incomplete list of countries which either impose no income tax or in imposing an income tax allow both a personal exemption and a credit for dependents which satisfy the similar credit requirement of the statute: Argentina, Bahama, Barbados, Basutoland, Bechuanaland Protectorate, Belgium, Bermuda, Bolivia, Bosnia, Brazil, British Guiana, British Honduras, Bukowina, Bulgaria, Canada, Carniola, Ceylon, Chile, China, Colombia, Cuba, Cyprus, Czechoslovakia, including Bohemia, Moravia, and Slovakia, Dalmatia, Denmark, Ecuador, Egypt, Falkland Islands, Fiji Islands, France, Galicia, Gambia, Germany, Gibraltar, Gold Coast, Goritz, Gradisca, Greece, Grenada, Guatemala, Herzegovina, Hongkong, Istria, Jamaica, Kenya, Luxemburg, Malay States, Malta, Mauritius, Mexico, Montenegro, Montserrat, Morocco, Newfoundland, Nicaragua, Nigeria, Northern Rhodesia, Norway, Nyasaland Protectorate, Panama, Paraguay, Persia, Peru, Porto Rico, Portugal, Rumania, St. Kitt-Nevis, St. Helena, Santo Domingo, Serbia, Siam, Sierra Leone, Silesia, Somaliland Protectorate, Spain, Swaziland, Switzerland, Trieste, Uganda Protectorate, Union of South Africa, Venezuela, Virgin Islands (British), Weihaiwei, Western Pacific Islands,

country' was used in § 222 (a) (3) of the Revenue Act of 1918 in relation to credits allowed to an alien resident of the United States for taxes upon income derived from sources in such 'country,' if the latter allowed a similar credit to citizens of the United States.[23]   Article 385 of Regulations No. 45, set forth the list of 'countries' which did or did not satisfy this reciprocal credit requirement. This Article further illustrates the ambiguity of the regulations.[24]

---

Zanzibar Protectorate. (b) The following is an incomplete list of countries which in imposing an income tax allow a personal exemption which satisfies the similar credit requirement of the statute, but do not allow a credit for dependents: Bachka, Banat of Temesvar, Croatia, Finland, India, Italy, Salvador, Slavonia, Transylvania. (c) The following is an incomplete list of countries which in imposing an income tax do not allow to citizens of the United States not residing in such country either a personal exemption or a credit for dependents and therefore fail entirely to satisfy the similar credit requirements of the statute: Australia, Austria, including Carinthia, Lower Austria, Salzberg, Styria, Tyrol, Upper Austria and Vienna, Costa Rica, Dutch Guiana, Great Britain and Ireland, Japan, the Netherlands, New Zealand, Trinidad, Sweden. The former names of certain of these territories are here used for convenience, in spite of an actual or possible change in name or sovereignty. A nonresident alien individual who is a citizen or subject of any country in the first list is entitled for the purpose of the normal tax to such credit for personal exemption and for dependents as his family status may warrant. If he is a citizen or subject of any country in the second list he is entitled to a credit for personal exemption, but to none for dependents: If he is a citizen or subject of any country in the third list he is not entitled to credit for either personal exemption or for dependents. If he is a citizen or subject of a country which is in none of the lists, then to secure credit for either a personal exemption or for dependents he must prove to the satisfaction of the commissioner that his country does not impose an income tax or that in imposing an income tax it grants the similar credit required by the statute."

[23] *Supra*, note 10.

[24] Article 385 of Regulations No. 45 is as follows (Treasury Decisions, vol. 3, p. 473):

"Art. 385. *Countries which do or do not satisfy the similar credit requirement.*—(a) The following is an incomplete list of the countries

20

It is urged that the Revenue Act of 1921 must be deemed to have been adopted with the meaning attributed to the term 'foreign country' by the regulations under the Act of 1918. But regulations of such an ambiguous character supplying no definite criterion cannot be deemed to determine satisfactorily the interpretation

which satisfy the similar credit requirement of section 222 (a) (3) of the Revenue Act of 1918, either by allowing to citizens of the United States residing in such countries a credit for the amount of income, war profits, or excess profits taxes paid to the United States upon incomes derived from sources therein, or in imposing such taxes, by exempting from taxation the incomes received from sources within the United States by citizens of the United States residing in such countries: Bulgaria, Canada, Italy, Newfoundland, Salvador.  (b) The following is an incomplete list of the countries which do not satisfy the similar credit requirement of section 222 (a) (3) of the Revenue Act of 1918, either by allowing no credit to citizens of the United States residing in such countries, for the amount of income, war profits, or excess profits taxes paid to the United States upon incomes derived from sources therein, or because such countries do not impose any income, war profits, or excess profits taxes: Argentina, Bahama, Belgium, Bermuda, Bolivia, Bosnia, Brazil, Chile, China, Costa Rica, Ecuador, Egypt, Finland, France, Great Britain and Ireland, Guatemala, Herzegovina, India, Jamaica, Japan, Montenegro, Morocco, New Zealand, Nicaragua, Panama, Paraguay, Persia, Peru, Portugal, Roumania, Santo Domingo, Serbia, Siam, Sweden, Switzerland, Venezuela.  The former names of certain of these territories are here used for convenience in spite of the actual or possible change in the name or sovereignty.  A resident of the United States who is a citizen or subject of any country in the first list is entitled, for the purpose of the total tax due the United States for 1918 and subsequent years, to a credit for the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to such country upon income from sources therein.  If he is a citizen or subject of any country in the second list, he is not entitled to such credit. If he is a citizen or subject of a country which is in neither list, then to secure the desired credit he must prove to the satisfaction of the Commissioner that his country satisfies the similar credit requirement of the statute."

of the statute. The Revenue Act of 1918 had continued the expression ' foreign country' precisely as it had been used in the preceding income tax acts without any such restricting gloss, and the Act of 1921 continued the expression as used in the Act of 1918. In these circumstances, we are of the opinion that the expression ' foreign country' in the Act of 1921 should be deemed to have the same significance in that Act that it had in the prior acts and was not limited by the regulations adopted under the Act of 1918. The regulations under the Act of 1921 were of the same equivocal sort as those to which we have referred under the Act of 1918, and can be deemed to have no greater effect.[25] The decisions of the Treasury Department [26] applying these regulations have no more force than the reasons given to sustain them and these, in our opinion, furnish no adequate ground for denying effect to the credit provisions of the statute in accordance with their manifest purpose.

In this view, we find it unnecessary to consider the arguments that have been adduced with respect to the status of New South Wales in its relation to the Commonwealth of Australia. There is no question that New South Wales levied the income taxes for which credit is sought and that its government had adequate authority to impose them.

We conclude that the Board of Tax Appeals and the Circuit Court of Appeals were right in holding that these income taxes fell within the statutory provision as to credits, and the judgment is affirmed.

*Judgment affirmed.*

---

[25] Regulations No. 62, Articles 382, 385.

[26] Solicitor's Memorandum No. 1187, October 18, 1919; Office Decision No. 1050, C. B. 5, p. 194, Solicitor's Memorandum No. 1614, C. B. III-1, p. 227.