## BLISS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 31.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Gould & Wilkie, of New York City (R. L. Von Bernuth and John F. Boyer, both of New York City, of counsel), for petitioner.

Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., for respondent.

Carlyle E. Yates, of New York City, amicus curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

But one question is presented. and that is common to both taxable years. It will suffice, therefore, to state the facts with reference to 1928 only. During that year the taxpayer made charitable contributions in the amount of $43,995.92, which she claims the right to deduct from gross income under section 23 (n) of the Revenue Act of 1928 (45 Stat. 801 [26 USCA § 2023 (n)]). This permits a deduction not exceeding "15 per centum of the taxpayer's net income as computed without the benefit of this subsection." Her "net income" for the year, as defined by section 21 (26 USCA § 2021), and without any deduction for charitable contributions, was nearly half a million dollars and included an item of $211,544.82 "capital net gain," upon which she elected to be taxed at the 12½ per cent. rate under section 101 (a), 45 Stat. 811 (26 USCA § 2101 (a). If this item may properly be included in net income to compute the 15 per cent. allowance as a deduction for charitable contributions, the taxpayer was entitled to deduct the full amount of her charitable gifts and no deficiency exists; but if, as the Commissioner contends, and as the Board held, it may not be so included, then her deduction was limited to $40,573.62 and the deficiency order was correct. Stated abstractly the question is whether, if a taxpayer elects to be taxed under section 101 (a) of the Revenue Act of 1928 (26 USCA § 2101 (a), capital net gain may be included in his net income when computing the 15 per cent. deduction allowable for charitable contributions under section 23 (n).

This question has been decided in favor of the taxpayer in two District Court cases. Atkins v. White, 3 F. Supp. 694 (D. Mass.); Blow v. United States (D. C. N. D. Ill.) 5 F. Supp. 737, decided September 21, 1933. It was decided adversely to the taxpayer by three different divisions of the Board of Tax Appeals, including the proceeding here sought to be reviewed. Harbison v. Com'r, 26 B. T. A. 896; Bliss v. Com'r, 27 B. T. A. 205; Colgate v. Com'r, 27 B. T. A. 506. Compare, Elkins v. Com'r, 24 B. T. A. 572; Livingood v. Com'r, 25 B. T. A. 585. Subsequently, however, the question was reviewed by the entire Board, and its position was completely reversed. Straus v. Com'r, 27 B. T. A. 1116. This opinion has been adhered to in Robinette v. Com'r, 28 B. T. A. ——, and Igleheart v. Com'r, 28 B. T. A. ——. From each of the foregoing decisions we are told that the losing party has taken an appeal, but none of the appeals has yet been decided.

The provision permitting a deduction from gross income of charitable contributions to the extent of 15 per cent. of the net income computed without the benefit of this deduction was introduced into the income tax law by section 1201 (2) of the Revenue Act of 1917, 40 Stat. 330. Its obvious purpose was to encourage gifts for charity, education, and science. Cong. Rec., September 7, 1917, p. 5728. It has been continued in substantially the same form in each successive revenue act. In the Revenue Act of 1921, § 206, the provision for taxing "capital net gain" at a rate different from that applied to income from other sources first appears. 42 Stat. 232. The reasons for this enactment are concisely stated in Burnet v. Harmel, 287 U. S. 103, 106, 53 S. Ct. 74, 77 L. Ed. 199. The provision appears in the 1928 Act as section 101. Paragraph (a) thereof provides that an individual taxpayer who derives a "capital net gain," as defined in paragraph (c), may, at his election, have his tax determined as follows: "a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain." Paragraph (b) provides for determining the tax when an individual taxpayer sustains a "capital net loss"; a partial tax is computed as in paragraph (a) and from this amount 12½ per centum of the capital net loss is deducted to arrive at the

total tax. Since the "partial tax" is first to be computed upon the basis of the "ordinary net income," we turn to section 101 (c) (7), 26 USCA § 2101 (c) (7) for a definition of that phrase: "(7) 'Ordinary net income' means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions." In the construction of this definition lies the controversy. The taxpayer contends that "net income, computed in accordance with the provisions of this title," requires computation according to sections 21, 22, and 23 (26 USCA §§ 2021-2023), and that from the computation thus made there are then "excluded," that is, stricken out or disregarded, all items of capital gain, capital loss, and capital deductions; that the figures remaining give "ordinary net income" and the figures excluded give "capital net gain." The commissioner, on the other hand, asserts that clause (7) should be read as though it directed net income to be computed "after excluding from the computation all items of capital gain, capital loss and capital deductions."

■ It is to be noted that the phrase "ordinary net income" occurs in both paragraph (a), which deals with the case of capital net gain, and paragraph (b), which deals with the case of capital net loss. It must have the same meaning in each. A construction favorable to the taxpayer in the former will operate to his detriment in the latter, and vice versa. Hence the canon of strict construction invoked by the commissioner on the theory that the taxpayer is claiming the benefit of an exemption seems inapplicable. We can hardly say that there is any plain advantage to be gained by taxpayers from one construction rather than the other; it depends on whether in the long run cases of capital net gain involve larger sums than cases of capital net loss. Canons of interpretation aside, it seems to us that merely as a matter of verbal construction the meaning contended for by the petitioner is the more reasonable and the more compatible with the purpose of the statute. There is nothing in section 101 which expressly indicates that the taxpayer was intended to lose any part of the deductions allowed by section 23 when his tax is determined according to the rates provided in section 101. Paragraphs (a) and (b) deal with computation of the tax rather than with computation of taxable income; the usual rates are applied, "as if this section had not been enacted," to that part of the taxable income called "ordinary net income" and the special 12½ per cent. rate to "capital net gain" or "capital net loss." Paragraph (c) defines the terms used

in the earlier paragraphs. It does not indicate an intention to modify the definitions of "net" and "gross" income contained in sections 21 and 22 (26 USCA §§ 2021, 2022), nor to change the deductions allowed by section 23 (26 USCA § 2023). On the contrary clauses (3) and (4) of section 101 (c) indicate that they are to remain unchanged (26 USCA § 2101 (c) (3, 4). They divide such deductions into "capital deductions" and "ordinary deductions." The latter mean "the deductions allowed by section 23 other than capital losses and capital deductions." Clause (5), 26 USCA § 2101 (c) (5), defining "capital net gain" makes it necessary to determine whether "ordinary deductions" exceed "gross income computed without including capital gains." We do not understand this to be a direction that in computing "ordinary deductions" gross income is to be decreased by the exclusion of capital gains. It means to us that ordinary deductions are to be figured in the ordinary way and then compared with "gross income computed without including capital gain" to see if they exceed it. If this be the correct construction, there is harmony between clause (5) and clause (7), and "net income" computed in accordance with sections 21, 22, and 23 is composed of two parts, "ordinary net income" and "capital net gain," to which respectively the appropriate rates may be applied as provided in paragraph (a).

■ This was the view of the Bureau of Internal Revenue for many years. On February 6, 1923, the deputy commissioner telegraphed in response to an inquiry: "Contributions; 15% limitation; Capital Net Gains: fifteen per cent limitation for deductions account charitable contributions applies to total net income inclusive of gain from sale of capital assets." C. C. H. Fed. Income Tax Service 1924, par. 2033. In 1924 a corresponding ruling as to capital losses was made: "Capital losses cannot be excluded in computing net income for the purpose of determining the amount of charitable contribution deductions." I. T. 404, Cum. Bul. III-2, p. 152. In 1928 the government argued before this court that section 206 of the Revenue Act of 1921, 42 Stat. 232 (corresponding to section 101 of the 1928 Act [26 USCA § 2101]) related merely to rates and did not affect the computation of the allowance of charitable deductions, and we by dictum approved this construction. Sadowsky v. Anderson (C. C. A.) 29 F.(2d) 677, 679. In November, 1931, the Board of Tax Appeals decided Elkins v. Com'r, 24 B. T. A. 572, and held, contrary to

the ruling of the bureau, that capital losses should be disregarded in computing the 15 per cent. deduction for charitable contributions. The commissioner announced that this decision was "contrary to the position which the Bureau has consistently followed," and would be appealed. Int. Rev. Bul. XI-7, 5386; Mim. 3931. But when the decision in Harbison v. Com'r, 26 B. T. A. 896, was announced in August, 1932, the commissioner withdrew his determination to appeal the Elkins Case and acquiesced in the Harbison decision. Int. Rev. Bul. XI-49, 5896; Mim. 3986. The consistent administrative rulings of the commissioner from 1923 to 1932, during which time the provisions in question were thrice re-enacted, may properly be given weight by the courts. Brewster v. Gage, 280 U. S. 327, 336, 50 S. Ct. 115, 74 L. Ed. 457. We do not think that the commissioner's subsequent about-face renders the principle inapplicable. It is not a case where the administrative ruling was ambiguous, as in Burnet v. Chicago Portrait Co., 285 U. S. 1, 21, 52 S. Ct. 275, 76 L. Ed. 587.

In our opinion the taxpayer was entitled to the deduction claimed and no deficiency in taxes existed.

The order is reversed.

L. HAND, Circuit Judge (dissenting).

In spite of the contrary ruling for nine years in the treasury and its very belated change of front, it appears to me that the intent is too plain for latitude of interpretation, though of course in view of the difference of opinion that has arisen I cannot feel as sure as I should, if the matter had come before me first. Section 23 (n) (2), 26 USCA § 2023 (n) (2), puts a limit upon charitable gifts of "15 per centum of the taxpayer's net income as computed without the benefit of this subsection"; so that in first computing the net income all charitable gifts must be omitted. That gives a net income, but only tentatively; all charitable gifts may be then deducted until they reach the prescribed limit, which is 15 per cent. of the net income, already provisionally computed. Thus the final taxable income is computed in two steps. If that be so, it appears to me that section 101 (e) (7), 26 USCA § 2101 (e) (7), becomes plain. The "ordinary net income" there defined is to be "computed in accordance with the provisions of this title," which as regards charitable gifts means that the limit must be fixed on a tentative net income. However, it is to be so computed only after excluding certain items; and "excluding" seems to me necessarily to relate to the first

computation. It would be very unreal to suppose that it referred to the deduction of items not "excluded" but once included in the provisional computation; that after they had been included, and 15 per cent. of the result deducted, the same items should be reversed; the gains subtracted and the losses added. That is not "excluding" them from the computation; "excluding" means dealing with them once and for all. But if it is possible to suppose that they were to affect the computation at all, the more natural way was to use the definitions in (e), subd. (5) and subd. (6), 26 USCA § 2101 (e) (5, 7), which had just been made; "capital net gain" would be subtracted from, or "capital net loss" added to, the net income. The definition would then have read: " 'Ordinary net income' means net income computed in accordance with the provisions of this title after deducting 'capital net gain,' or adding 'capital net loss.' " I think that the Board was right.