JULES D. LEDERMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6347.   Promulgated May 8, 1946.

*Jules D. Lederman, Esq.,* in propria persona.
*Leonard A. Marcussen, Esq.,* for the respondent.

992

## OPINION.

HARRON, *Judge: Issue 1.*—We think that there are two answers to petitioner's contention that he is entitled to a credit of $127.16 for taxes paid to a possession of the United States, representing one-third of the taxes paid in 1941 by the administrator on the $381.49 deficiency assessed by the Philippine Government against his wife's 1939 Philippine income tax liability. It is true that section 131 of the Internal Revenue Code, as amended,[2] when read in conjunction with

---

[2] SEC. 131.  TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.  [As amended by the Revenue Acts of 1939, 1942, and 1943.]

(a) ALLOWANCE OF CREDIT.—If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter, except the tax imposed under section 102 or section 450, shall be credited with:

(1) CITIZENS AND DOMESTIC CORPORATIONS.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-

section 23 (c) (1) (C), allows a citizen the choice of taking the amount of income taxes imposed by a possession of the United States either as a deduction from gross income or as a credit against the tax, and of changing the choice, within prescribed time limits, when once made. See S. Rept. No. 1631, 77th Cong., 2d sess., 1942, p. 132. And it is also true that an individual beneficiary of an estate or trust may claim the credit for his proportionate share of the foreign taxes of the estate or trust. But the primary design of this credit provision was to mitigate the evil of double taxation, *Burnet* v. *Chicago Portrait Co.,* 285 U. S. 1, which exists only when the same income is taxed both

---

profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States ; and

\* \* \* \* \* \* \*

(4) PARTNERSHIPS AND ESTATES.—In the case of any such individual who is a member of a partnership or a beneficiary of an estate or trust, his proportionate share of such taxes of the partnership or the estate or trust paid or accrued during the taxable year to a foreign country or to any possession of the United States, as the case may be.

Such choice may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter.

(b) LIMIT ON CREDIT.—The amount of the credit taken under this section shall be subject to each of the following limitations :

(1) The amount of the credit in respect to the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his entire net income, in the case of a taxpayer other than a corporation, or to the normal-tax net income in the case of a corporation, for the same taxable year ; and

(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income, in the case of a taxpayer other than a corporation, or to the normal-tax net income, in the case of a corporation, for the same taxable year.

(c) ADJUSTMENTS ON PAYMENT OF ACCRUED TAXES.—If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Commissioner, who shall redetermine the amount of the tax for the year or years affected, and the amount of tax due upon such redetermination, if any, shall be paid by the taxpayer upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 322. In the case of such a tax accrued but not paid, the Commissioner as a condition precedent to the allowance of this credit may require the taxpayer to give a bond with sureties satisfactory to and to be approved by the Commissioner in such sum as the Commissioner may require, conditioned upon the payment by the taxpayer of any amount of tax found due upon any such redetermination ; and the bond herein prescribed shall contain such further conditions as the Commissioner may require.

(d) YEAR IN WHICH CREDIT TAKEN.—The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c) of this section. If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken upon the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

(e) PROOF OF CREDITS.—The credits provided in this section shall be allowed only if the taxpayer establishes to the satisfaction of the Commissioner (1) the total amount of income derived from sources without the United States, determined as provided in section 119, (2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this section, such amount to be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary, and (3) all other information necessary for the verification and computation of such credits.

\* \* \* \* \* \* \*

in the possession and in the United States, *Hubbard* v. *United States* (Ct. Cls.), 17 Fed. Supp. 93; certiorari denied, 300 U. S. 666. As to petitioner there was never any double taxation. No amount of the income on which the Philippine tax deficiency was paid was ever includible in either petitioner's or the testamentary trust's taxable income. That the wife, had she lived, would have been able to allocate the 1941 deficiency payment as a tax credit against other Philippine income received by her in 1941 to mitigate the possible double taxation of her 1939 income, see *United States* v. *Rogers*, 122 Fed. (2d) 485 (C. C. A., 9th Cir.), is no reason to allow the credit to petitioner who did not receive the 1939 income.[3] Cf. *Hubbard* v. *United States*, *supra*; *Helvering* v. *Campbell*, 139 Fed. (2d) 865 (C. C. A., 4th Cir.).

Moreover, even assuming that the payment in 1941 by the administrator in satisfaction of the wife's 1939 Philippine income tax liability could give rise to a tax credit, petitioner's "proportionate share of such taxes of the * * * estate" (sec. 131 (a) (4)) was in no sense one-third of the amount paid, or, for that matter, any lesser amount. The income tax due the Philippines by the wife was a claim against her estate. Despite petitioner's testimony that he did not know whether the claim had been paid by the administrator from principal or from income of the estate, the claim was payable from and chargeable only to the assets of the estate and it served to reduce the amount of principal available for distribution to the trust and the two daughters. As to the trust, the payment of the $381.49 had the effect of reducing its corpus by $127.16. But petitioner had no interest in the corpus, as such; he was only the life income beneficiary. If the tax credit could be claimed by anyone, it would have to be by the two daughters, whose interests as remaindermen in the corpus had been adversely affected by the payment. Obviously, the amount of income which would be available to petitioner from a corpus $127.16 greater is not the "proportionate share" of the taxes within the intendment of the statute. Yet petitioner can point to no other harm. In a sense, the problem is similar to that raised in cases where taxes or other expenses payable from the corpus of a trust do not serve as a deduction or to reduce the amount of income currently distributable to the income beneficiary. See *Ardenghi* v. *Helvering*, 100 Fed. (2d) 406 (C. C. A., 2d Cir.); certiorari denied, 307 U. S. 622.

It is held that petitioner is not entitled to a credit in the amount of $127.16.

*Issue 2.*—The second issue relates to petitioner's claim for a foreign tax credit in the amount of $222.78, the amount of tax withheld at the

---

[3] At least in the absence of the applicability of section 126 (b) (1) of the Internal Revenue Code, relating to credits of decedents with respect to taxable years ending after December 31, 1942.

source by Calamba and American on dividends paid in 1941 to the trust. Petitioner has made claim for a credit for taxes *paid*, upon the argument that the withholding by Calamba and American constitutes payment of the foreign tax for the purposes of section 131 and for the purposes of determining his right to the credit for the year 1941. Respondent concedes on brief that, if the withholding constitutes payment of the foreign tax under section 131, petitioner is entitled to the claimed credit in 1941 for tax paid. However, respondent argues that a withheld tax is only an *accrued* tax. He takes the position that because Calamba and American had not paid in 1941 to a Government of the Philippines, the amount withheld for payment of tax, and since the amount withheld has not been paid up to the present time to a Government of the Philippines, petitioner can not take a credit for a tax paid.

There is no doubt that $222.78 was withheld by Calamba and American for payment to a Government of the Philippines. The stock transfer and dividend disbursing agent in San Francisco of Calamba and American testified in this proceeding that the above sum had not yet been paid to a Philippine Government, but that it would be paid to the duly constituted government as soon as it becomes established in the Philippine Islands.

We think petitioner's contention should be sustained. While the situation existing in the Philippine Islands on and after May 15, 1942, was unusual, the date when the withholding agent would have paid the tax withheld to the Philippine Government, and in this particular case necessitated the procedure which has been adopted by Calamba and American, nevertheless it is not unusual for a withholding agent to pay to a government a tax which has been withheld in a year subsequent to the year in which the tax was withheld. Nothing in the statute or regulations suggests that the credit for taxes *paid* is not to be taken in the year of withholding, but must be claimed only in the year in which the withholding agent actually turns over the funds to the foreign country or possession. Once the taxpayer has parted with his funds, there seems to be no reason to correlate the credit for taxes *paid* to an actual payment date by the withholding agent, a date over which the taxpayer has no control whatsoever. For example, in the instant case, were Calamba to pay the tax to the Philippine Government in 1946, and American in 1947, respondent would have to say that these payment dates should control even though as to petitioner both taxes were paid in the fiscal sense in 1941, when they were withheld. Moreover, section 131 (c) of the Internal Revenue Code, which allows the Commissioner to require a bond conditioned upon performance where a credit for taxes accrued is claimed, was to assure that a citizen or resident might not take advantage of the diffi-

culty of collecting the foreign tax and avoid payment of both the Federal and foreign tax. A tax collected at the source by withholding presents no such problem, and it does not seem that the statute contemplates that the taxpayer whose tax has already been withheld must nevertheless be subject to the obligation of furnishing a bond that the withholding agent will properly perform.

Further support for the view that the date of withholding is the proper date of payment for purposes of the credit for taxes paid may be found in the information and proof requirements of the regulations. Schedule C of Form 1116, applicable to taxes *paid* or accrued on *withheld* income, asks for information only on the amount of tax withheld and the date of withholding. No space is provided in the forms in which to set forth the date of payment to the foreign government or to a possession by the withholding agent. In all the other schedules the dates of accrual and payment (if paid) must be specified. Thus, it is clear that withholding and payment are considered to be the same for purposes of the credit.

Moreover, section 29.131–3 of Regulations 111, which sets forth the provisions of section 19.131–3 of Regulations 103, amended by T. D. 5056, C. B. 1941–2, p. 139, provides as follows:

Where it has been established to the satisfaction of the Commissioner that it is impossible (1) to furnish a receipt for such foreign tax payment or (2) the foreign tax return [for taxes accrued], or (3) *direct evidence of the amount of tax withheld at the source*, secondary evidence of the payment or accrual of the tax or of the withholding of the tax may, in his discretion, and under such rules as he may prescribe, be accepted by the Commissioner. [Italics added.]

Thus, it seems clear from the regulation which sets forth the "Conditions of Allowance of Credit," that direct evidence of the fact that tax has been withheld at the source and of the amount withheld are satisfactory and sufficient proof to support a claim for credit, regardless of whether the claim is for tax paid or tax accrued. Petitioner has furnished such direct evidence in this case through the testimony of the San Francisco agent of Calamba and American and the introduction of the canceled dividend checks showing the amount of the tax withheld.

Although not strictly analogous, both the United States and the Philippine Islands internal revenue codes allow their respective nonresident aliens a credit for taxes withheld at the source, and payment by the withholding agent is not made a prerequisite of the allowance of the credit. See section 143 (d) of the Internal Revenue Code and section 53 (d) of the Philippine National Internal Revenue Code.

It is held, therefore, that petitioner is entitled to a credit for taxes paid, subject to the limitations of section 131 (b) of the Internal Revenue Code, for the $222.78 withheld by Calamba and American in 1941.

Allowance of a credit now is of course without prejudice to respondent to assert in a subsequent proceeding the applicability of section 131 (c) of the Internal Revenue Code if the withheld taxes are not actually paid over by Calamba and American to the Philippine Government. See *Pacific Metals Corporation*, 1 T. C. 1028.

The petition contains the statement that it has been filed "on behalf of [petitioner] himself and also on behalf of other stockholders of American Rubber Company and Calamba Sugar Estate * * * all of whom have been disallowed deductions claimed for taxes that had accrued during the year 1941 in favor of the Philippine government * * *." The other stockholders are not before this Court in this proceeding. Therefore, the decision in this case is limited to the income tax liability of petitioner only.

Reviewed by the Court.

*Decision will be entered under Rule 50.*