KIN WAN TSO, Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Peter D. Keisler,[1] Acting Attorney General, Respondents.

Nos. 03-4925-ag(L), 03-41185-ag(Con).

United States Court of Appeals, Second Circuit.

Oct. 19, 2007.

Michael P. DiRaimondo, Melville, N.Y. (Marialaina L. Masi, Mary Elizabeth Delli-Pizzi, and Stacy Huber on the brief), for Petitioner.

Jamil N. Jaffer, National Security Division, United States Department of Justice, Washington D.C. (Rosa E. Rodriguez-Valez, United States Attorney for the District of Puerto Rico and Nelson Perez-Sosa,

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Peter D. Keisler is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

Assistant United States Attorney, San Juan, PR on the brief), for Respondent.

PRESENT: Hon. PIERRE N. LEVAL, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

Kin Wan Tso ("Tso") is a native of Hong Kong who allegedly was rendered stateless when Hong Kong reverted from British to Chinese sovereignty on July 1, 1997.[2] As relief from removal, Tso applied for asylum and withholding of removal on the ground that he feared persecution by the Chinese government, in Hong Kong, on account of his openly homosexual lifestyle. Before us are Tso's timely petitions for review of: (1) the BIA's decision affirming the decision of the Immigration Judge ("IJ") denying Tso's applications for asylum and withholding of removal, In re Kin Wan Tso, No. A76 854 034 (B.I.A. Apr. 18, 2003), aff'g No. A76 854 034 (Immig. Ct. N.Y. City May 28, 1999); and (2) the BIA's decision denying Tso's motion to reopen, In re Kin Wan Tso, No. A76 854 034 (B.I.A. Apr. 18, 2003). We assume the parties' familiarity with the factual background and procedural history of this case.

Tso claimed in his removal proceeding that he is openly gay, and that notwithstanding Hong Kong's semi-autonomous status, China's brutal anti-homosexual policies have been extended to that region. At the conclusion of the hearing, the IJ found that homosexual males in Hong Kong are a cognizable "social group" for purposes of asylum eligibility, and that Tso was a member of that social group. The IJ, however, denied Tso's asylum claim on the ground that he failed to demonstrate that China's policies toward homosexuals extended to Hong Kong. The BIA affirmed, explaining that while the IJ "may have mischaracterized Hong Kong as a country" separate from China, Tso "has nevertheless failed to produce adequate evidence that following reversion from British to Chinese sovereignty, social conditions in Hong Kong have changed to such an extent that the respondent, as a homosexual and gay rights activist, would have a well-founded fear of persecution if he returns to his homeland."[3]

This Court generally reviews only the final order of the BIA, but when the BIA adopts the IJ's decision and supplements it, as it did here, we review the decision of the IJ as supplemented by the BIA. See Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir.2005). Although we review factual findings under the substantial evidence standard, questions of law and the application of law to fact are reviewed de novo. See Secaida–Rosales v. INS, 331 F.3d 297, 307 (2d Cir.2003).

As relevant here, a person qualifies as a "refugee" for asylum purposes if he demonstrates a well-founded fear of returning to the "country" of his nationality or, if stateless, the "country" of his last habitual residence. See 8 U.S.C. § 1101(a)(42).[4]

---

2. According to the State Department Report in the record, Hong Kong has existed as a Special Administrative Region of the People's Republic of China since the time of reversion.

3. The BIA's reference to Tso's "homeland" can only mean Hong Kong, as Tso departed Hong Kong years before it reverted to Chinese sovereignty and there is no evidence in the record that Tso ever lived in China.

4. Notwithstanding that Tso had arrived in the United States directly from the United Kingdom after having lived and studied there for five years, the IJ accepted agency counsel's position that Tso's country of last habitual residence was Hong Kong. Because neither party has raised this issue on appeal, whether such assumption was accurate is not before us. Cf. Wangchuck v. DHS, 448 F.3d 524, 528–29 (2d Cir.2006) (remanding where the

Because both the IJ and BIA denied Tso's asylum claim on the ground that he failed to meet his burden of demonstrating that he would be persecuted in Hong Kong, much of the analysis in this case turns on the threshold issue of whether Hong Kong is a "country" for purposes of the asylum law. Neither the Immigration and Nationality Act nor agency regulations define the word "country" as it is used in the asylum context. Moreover, neither the IJ nor the BIA expressly addressed the issue of whether Hong Kong is a country for purposes of deciding Tso's asylum claim; they simply treated it as one. *See infra.* We thus remand to allow the BIA to address this issue in the first instance. *See Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 192 (2d Cir.2005).[5] A remand to determine that issue is not futile because if Hong Kong is not a country, then the grounds on which the IJ and BIA denied Tso's asylum application cannot withstand scrutiny because the IJ and the BIA did not correctly apply the burdens that govern when government sponsored persecution exists.

Specifically, if Tso demonstrated that he belongs to a group that is persecuted by the government in the country to which he would be deported, *see* 8 C.F.R. § 208.13(b)(1), the burden then shifts to the government to demonstrate that he would be able to "relocate" to a part of the country where such activity is not practiced. *See* 8 C.F.R. § 208.13(b)(3)(ii). Neither the IJ nor the BIA ruled on the question whether Tso carried his burden to demonstrate that homosexuals are persecuted in China. If he did, then the burden should have shifted to the government to show that such persecution does not apply in Hong Kong, and that, "under all the circumstances, it would be reasonable" to expect Tso to relocate to Hong Kong upon his removal. *See* 8 C.F.R. 208.13(b)(3)(ii). Instead, the IJ and BIA placed on Tso the burden of proving that homosexuals are persecuted in Hong Kong and concluded that he failed to carry that burden.

The same analysis applies with respect to Tso's withholding of removal claim, as the internal relocation standards governing withholding are materially identical to those that apply in the asylum context. *Compare* 8 C.F.R. § 208.16(b)(2)–(3) *with* 8 C.F.R. § 208.13(b)(2)–(3).

IJ failed to decide the threshold issue of the asylum applicant's country of nationality or last habitual residence).

5. *Cf. Chan Chuen v. Esperdy,* 285 F.2d 353 (2d Cir.1960) (per curiam). In *Chan Chuen,* this Court held that for purposes of designating a country of deportation under former 8 U.S.C. § 1253(a), the term "country" as used in that statute encompassed Hong Kong (then, a British colony). *Id.* at 354. Instructively, the Court explained that "the word 'country' has no fixed meaning, and should be construed in accordance with the purpose of the particular legislation." *Id.* (citing *Burnet v. Chicago Portrait Co.,* 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587 (1932)); *see also John Cheung v. United States,* 213 F.3d 82, 91 (2d Cir.2000) (explaining that the word "country" has a variety of meanings, some denoting a purely geographical concept, others including a political component). In *Chan Chuen,* this Court went on to explain that the statute at issue was "obviously intended to avoid arbitrary restrictions on the places to which a deportable alien may be sent," 285 F.2d at 354; *accord Leong Leun Do v. Esperdy,* 309 F.2d 467, 478 (2d Cir.1962) (Lumbard, *C.J.,* concurring) (explaining that former 8 U.S.C. § 1253(a) "was designed to facilitate deportation proceedings by increasing the number of places to which deportation may be ordered"), and in that context concluded that the term "country" includes "any place possessing a government with authority to accept an alien deported from the United States." *Chuen,* 285 F.2d at 354. The purposes of the asylum law are, of course, very different than those undergirding the statute at issue in *Chuen.*

Because the BIA failed to address whether Hong Kong is a "country" for purposes of Tso's asylum claim, and because the BIA's and IJ's analysis constitutes legal error if Hong Kong is not a country, we vacate the final order of the BIA. We also vacate the BIA's denial of Tso's motion to reopen since it was predicated on the same faulty analysis; namely, that it was up to Tso to demonstrate that he would suffer persecution in Hong Kong. We also note that the BIA appeared to believe that persecution could only be established by petitioner if he demonstrated that he would be "singled out." This is incorrect; on remand petitioner could meet his burden of demonstrating a well-founded fear of persecution if he can demonstrate a "pattern or practice" of persecution against homosexuals in the country to which he would be deported. *See* 8 C.F.R. § 208.13(b)(2)(iii).

For the foregoing reasons, the petitions for review are GRANTED, the BIA's orders are VACATED, and the case is REMANDED for further proceedings consistent with this decision.