## GENTSCH v. GOODYEAR TIRE & RUBBER CO. et al.

### No. 10003.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1945.

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Fred E. Youngman, all of Washington, D. C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellant.

Thos. E. Lipscomb, of Cleveland, Ohio (Thompson, Hine & Flory and David A. Gaskill, all of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and FORD, District Judge.

SIMONS, Circuit Judge.

The problem posed by this appeal relates to permissive statutory deductions from gross income or credit on United States taxes, for taxes imposed by the authority of a foreign country. It involves additional taxes paid by the appellees for 1932 for the recovery of which, after the disallowance of a timely claim for refund, they sued the Collector and recovered judgment. Goodyear sued the Collector on behalf of itself and subsidiaries, and after the Collector's death, substituted his executrix. The judgment was summary after the denial of the defendant's motion to dismiss.

The facts are not in dispute. Goodyear filed a consolidated income tax return in 1933 for the taxable year 1932, reporting a consolidated net loss of $2,916,152.36. Included among deductions claimed from gross income, was $141,730.72, for taxes paid to foreign governments. The Commissioner of Internal Revenue, after investigation, determined that the affiliated group had a consolidated net income of $312,944.05 after deductions for the foreign taxes, and that on this amount a tax of $45,376.89 was due, which together with interest bringing it to a total of $66,618.72, was assessed and paid by Goodyear on January 17, 1941.

On or about August 29, 1940, and prior to the payment of the tax, Goodyear filed an amended consolidated income tax return for 1932, in which no deduction was claimed for foreign taxes, but with which was submitted a statement claiming credit for such taxes to the extent necessary to offset an admitted tax liability of $65,346.63. In its claim for refund Goodyear represented that the sum previously allowed as a deduction, should be added to income, and that credit for the foreign against domestic taxes should be allowed in the sum of $89,285.98, which was more than sufficient to offset the tax liability for the year involved. The district court, in the suit that followed a denial of the refund, approved this contention, and judgment for refund followed.

The statutory provisions which bear upon the problem insofar as they are material, are § 23(c) of the Revenue Act of 1932 and § 131 of the same Act, 26 U.S.C.A. Int.Rev.Acts, pages 489 and 530, both printed in the margin.[1] The question involved, and it is the sole question, is whether the taxpayers, after having in their original return, taken a deduction from gross income for foreign taxes, permissible under § 23, may later, by an amended return, claim the benefit of the credit author-

---

[1] "Sec. 23. Deductions from Gross Income.

"In computing net income there shall be allowed as deductions: * * *

"(c) Taxes Generally. Taxes paid or accrued within the taxable year, except— * * *

"(2) income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States; but this deduction shall be allowed in the case of a taxpayer who does not signify in his return his desire to have to any extent the benefits of section 131 (relating to credit for taxes of foreign countries and possessions of the United States); * * *"

"Sec. 131. Taxes of Foreign Countries and Possessions of United States.

"(a) Allowance of Credit. If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

"(1) Citizen and Domestic Corporation. In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *"

ized by § 131 when an adjustment of their income by the Commissioner discloses such credit to be to their advantage. It is to be noted that when the taxpayers included their foreign taxes in the deductions claimed in their original return, they assumed they had no tax liability for the year 1932, so that whether the foreign taxes were claimed as a deduction from gross income or as a credit against taxes,. was entirely unimportant and immaterial. It must also be observed that there is here no suggestion that the taxpayers, in their original return, were guilty of fraud or evasion of their tax liability, or of an understatement of gross income.

The sole ground upon which the judgment is assailed is that when Congress granted taxpayers the privilege of claiming a credit upon their federal income tax for taxes paid to foreign governments, it conditioned that right upon an election to be expressed in the taxpayers' income tax return, and that the income tax return referred to in § 23(c) (2) means an original return or an amended return filed within the time allowed for filing an original return. The statute does not in words define "return" in § 23(c) (2), but it is contended that the legislative history of the provision indicates that it requires an election to be made either in the original return or in an amendment thereto filed within the time allowed for the filing of an original return. It is pointed out that Congress first inaugurated the policy of allowing a credit for foreign taxes in § 222 of the Revenue Act of 1918, Chapt. 18, 40 Stat. 1057. That section permitted a very broad credit for foreign taxes but denied a deduction from gross income for any such taxes allowed as a credit, §§ 214(a) (3) and 234(a) (3). This credit was extended in the case of domestic corporations by providing that a portion of any foreign taxes paid by a foreign subsidiary, might be deemed to have been paid by the parent and its credit enlarged accordingly. The credit provisions of the 1918 Act in some cases extinguished the federal tax because of the higher tax rates in foreign tax laws, so the Revenue Act of 1921, Chapt. 136, 42 Stat. 227, §§ 222, 238, included limitations designed to protect the domestic tax on domestic income, but up to the time of the enactment of the 1932 Act the right to a credit for foreign taxes paid was not conditioned upon the taxpayer's election to claim the credit. This first appeared in §

131 of the Revenue Act of 1932, by which, as explained by the House Ways and Means Committee (1939-1 Cum.Bull.Pt. 2, 457, 473), "the taxpayer is not allowed any deduction for such foreign taxes in case he claims a credit for such taxes on his return." The Commissioner ruled, under this provision, that a taxpayer who claims a deduction from gross income in his original return for foreign taxes, is precluded, after the expiration of the due date for filing his return, from amending the return and claiming such taxes as a credit against his income tax liability rather than as a deduction (1939-1 Cum.Bull.Pt. 1, 191). The appellant also points to the fact that § 131 was amended by § 158 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, to permit the taxpayer an election to take the benefits of § 131 at any time prior to expiration of the period for claiming a refund or credit for the year involved, and that the new provision was not made applicable to any tax years beginning after December 31, 1940.

In response, the taxpayers submit the history of these related provisions of the 1932 Act in the Board of Tax Appeals and the Tax Court of the United States. In Raymond v. Commissioner of Int. Rev., 34 B.T.A. 1171, the Board first had occasion to construe the 1932 Act in the case of a taxpayer who had no income from domestic sources in 1932, but received income from Canadian sources on which he had paid a tax. In his United States return he took losses which he considered deductible, and showed a net loss for the year with no tax due the United States. Upon audit of the return certain deductions were disallowed and a tax liability determined. Raymond then filed a claim for an allowance of a credit for Canadian taxes against the tax so determined, and later filed an amended return to the same effect. In deciding the issue for the taxpayer, the Board concluded that there was no occasion for Raymond to signify in his original return a desire to have the credit allowed because by that return no taxes were shown to be due, and that to hold otherwise would make an absurdity of the statute and inflict injustice. It pointed out that it was not until the Commissioner determined that a tax was due that the taxpayer had occasion to claim the benefits of § 131, that the statute does not fix a definite time for claiming the credit but requires only that the taxpayer signify his desire to have the credit in his

return, and he did so in an amended return. The time element is not important because the Commissioner suffers no detriment and gives up no right when he permits a taxpayer to file an amended return and thereby claim a credit for foreign taxes against a tax which the Commissioner himself has computed on the return originally filed.

The decision in the Raymond case was followed in Connor v. United States, D.C. N.H., 19 F.Supp. 97. There the taxpayer did not know he owed a Canadian tax at the time of the return. Four years later he filed an amended return claiming a credit for Canadian taxes, and upon its being denied, instituted suit and obtained a judgment for refund. In several cases in the Western District of New York, namely, Shire v. McGowan, 1939, 24 A.F.T.R. 1256 and Marcy v. McGowan, 1940, 27 A.F.T.R. 1107, neither officially reported, decision went for the Government on the ground that the original returns in which deductions were taken for foreign taxes, showed a tax liability, and this was considered a feature distinguishing them from Raymond v. Com'r, supra, and Connor v. United States supra.

The problem again came before the Board of Tax Appeals in Howe v. Com'r, 44 B.T.A. 894. There the taxpayer was unaware that foreign taxes could be set off as credit against the United States tax, and later filed an amended return claiming a credit. The Board decided for the government, on the ground that credit should have been claimed in the original return. It based decision on factual distinctions between Howe and Raymond, and upon the fact that when it decided the Raymond case it did not have the benefit of Supreme Court pronouncements in J. E. Riley Invest. Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36, though it thought it unnecessary to review its holdings in the Raymond case. Riley v. Commissioner and Mother Lode Coalition Mines Co. v. Helvering, 317 U.S. 222, 63 S.Ct. 179, 87 L.Ed. 227, are here urged as in support of the Board's view, which is reiterated in the recent decision of the Tax Court in W. K. Buckley, Inc. v. Com'r, decided September 21, 1945, 5 T.C. 787, although the taxpayer in Buckley, after claiming a deduction in his original return, never abandoned his election and so was held precluded from obtaining the alternative benefit of a credit against the tax.

Our consideration must, first, be directed to the Riley and Mother Lode cases to determine whether the rationalizations there employed justified departure from the doctrine of the Raymond case. We start with the proposition that the purpose of § 131 is to obviate double taxation, American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591, and to facilitate the foreign enterprises of domestic corporations, Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587. We think, therefore, that the controlling principle of statutory construction is not that which requires special tax exemptions to be strictly construed, but rather the principle so often announced as not to require citation, that statutes must be so construed as to give effect of their general purpose and to implement the policy of the Congress. Relief from double taxation is not so much an act of grace as one of justice in determining the true net income of the taxpayer. Neither the Riley nor Mother Lode case involves a construction of § 131. Both cases dealt with § 114(b) (4) of the 1934 Act, 26 U.S.C.A. Int.Rev.Code § 114 (b), (4), which required the taxpayer to elect in his "first return" whether a depletion allowance was to be computed with or without regard to percentage depletion —an election which is applicable not only to the tax year but to all subsequent taxable years. Section 53(a) (1) of the 1934 Act, 26 U.S.C.A. Int.Rev.Code § 53(a) (1), required the return to be made on or before March 15, 1935, and § 53(a) (2) empowered the Commissioner to grant a reasonable extension for filing returns, but not to exceed six months. The section here involved does not refer to a "first return," contains no limitation upon the filing of either an original or an amended return, does not characterize the notice therein as an election, and contains no bar to amendment. "Admittedly the Treasury has been liberal in accepting such amended returns even though filed after the period for filing original returns." Riley case, 311 U.S. at page 58, 61 S.Ct. 97, 85 L.Ed. 36. A construction of the phrase "first return" came before the Supreme Court in Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340. There it was claimed by the Commissioner that a "first return" was the first paper filed by the taxpayer as

and for a return. The Supreme Court had no difficulty in reversing a decision reaching that result and approving our adjudication in Glenn v. Oertel Co., 6 Cir., 97 F.2d 495, in which we held that a first return was any return, whether original or amended, for the first year in respect to which a tax was imposed under §§ 215 and 216 of the National Industrial Recovery Act.

No practical administrative considerations require that a return under § 23 be construed as an original or a first return when no taxes are by it disclosed to be due. Assuming that the section requires the taxpayer to make an election, there is, then, no basis for choice. The elements from which selection must be made, and which alone give it meaning, come into existence only when there is disclosed or the Commissioner has determined a tax liability. Then, for the first time, is the taxpayer confronted with the need for determining whether to deduct his foreign taxes from gross income or to claim them as a credit on his tax liability. As the Chief Justice said in the Haggar case, supra [308 U.S. 389, 60 S.Ct. 339]: "All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and the legislative purpose."

Frequently the extent of allowable deduction or credit is not definitely determined until long after the time expires for the filing of an original return. This situation is taken care of by § 131(c) which provides that if accrued taxes, when paid, differ from the amounts claimed as credits by the taxpayer, or if a tax paid is refunded in whole or in part, the Commissioner shall redetermine the amount of tax for the years affected. Indeed, under any circumstances, a redetermination of tax liability by the Commissioner is, for practical purposes, an amendment of the taxpayer's return, or is followed by the filing of an amended return.

The amendment of § 131 by § 158 of the Revenue Act of 1942, previously referred to, is but additional indication of the importance which the Congress attaches to the allowance of a credit for foreign taxes paid in its efforts to avoid double taxation and to encourage foreign trade. Of course, this amendment must be viewed as a change in the law without retroactive force, but so viewed, it cuts both ways. If the original section limited the claim for credit to the original return, then the 1940 provision is a liberalization. If by a return is meant any return for the tax year, whensoever filed, then the 1940 amendment is restrictive, limiting the claim for credit to the period provided for claiming a refund. It would seem that the primary, if not the sole purpose of the provision in § 131(a) which requires the taxpayer, if he desires to have the benefits of the credit against the tax, to so signify that desire in his return, must have been the safeguarding of the treasury from a double reduction of tax liability, and to enable the Commissioner readily to check in auditing the return, deductions claimed so as to guard against the same items being claimed in credit against taxes.

There is no contention here that the taxpayer unduly delayed the filing of a claim for credit after it ascertained its tax liability. As previously noted, the assessment was made on January 17, 1941, and the amended return with the statement therewith of the credit claim, was made on August 29, 1940.

Judgment affirmed.