M/V NONSUCO, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

S/S SAN·VINCENTE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33522, 33523.   Filed November 26, 1954.

*Thomas Witter Chrystie, Esq.*, for the petitioners.
*John J. O'Toole, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* The facts were stipulated by the parties and are found accordingly.

Petitioners are corporations organized under the laws of the Commonwealth of the Philippines to acquire and operate oceangoing vessels for the transportation of sugarcane between ports in the Philippines and ports in the United States. Prior to the involvement of the United States in World War II, each petitioner owned one ship which it operated between Manila and New York. During the war, each of the ships performed transportation services for the United States Government under a Requisition Time Charter for which payments were made to the owner by the War Shipping Administration. In 1946, the ships were returned to the control of their respective owners. At all pertinent times, both ships were documented under the laws of, and flew the flag of, the Philippines.

The parties now agree that petitioners were resident foreign corporations during the years involved herein and taxable under the provisions of sections 231 (b) and (c), and section 119 (e), Internal Revenue Code of 1939, as amended. Section 231 (d) (1), however, provides that earnings of foreign corporations shall be exempt from taxation if "derived from the operation of a ship or ships documented under the laws of a foreign country which grants an equivalent exemption to citizens of the United States and to corporations organized in the United States." Petitioners contend that the Philippines were a "foreign country" which granted an "equivalent exemption" pursuant to Commonwealth Act No. 637, approved June 10, 1941, which provided as follows:

*Section 1.* The income of non-resident citizens of the United States or corporations organized under the laws of the United States or any of its political subdivisions, which consist exclusively of earnings derived from the operation of ships documented under the laws of the United States, except income derived by them from the operation of a ship or ships in the Philippine coastwise trade, shall not be included as a part of the gross income of such citizens or corporations and shall be exempt from the tax established under Title II (Income Tax) of the National Internal Revenue Code.

*Section 2.* The income derived exclusively by nonresident citizens of the United States or by corporations organized under the laws of the United States or any of its political subdivisions from the operation of ships documented under the laws of the United States, except income derived by such citizens or corporations from the operation of ship or ships in the Philippine coastwise trade, shall not be included in the computation of the residence tax collectible under Commonwealth Act numbered 465, entitled "An act to impose a residence tax."

*Section 3.* The exemptions herein provided shall be allowable if and when the Government of the United States grants an equivalent exemption to nonresident citizens of the Philippines in the United States and the corporations organized in the Philippines with regard to their income derived exclusively from the operation of ships documented under the laws of the Philippines.

Respondent, on the other hand, contends that Act No. 637 does not grant an "equivalent exemption" because it expressly excludes from

the exemption income derived from the operation of ships "in the Philippine coastwise trade." He also contends that the Philippines were not a "foreign country" until their independence on July 4, 1946. (These contentions are also the views expressed in I. T. 3517, 1941–2 C. B. 153.) Since the Philippine law continued in effect from July 4, 1946, to October 21, 1946, and since neither party questions the fact that the Philippines were a foreign country for this brief period, we consider first whether or not the Philippine law granted an "equivalent exemption" within the meaning of section 231 (d) (1).

Act No. 637 does purport to grant an exemption to United States shipping companies. Respondent, however, contends that it is not equivalent to the unrestricted exemption granted by section 231 (d) (1) because it expressly excludes earnings from the Philippine coastwise trade. It is our view, however, that the earnings involved in the instant case were derived from shipping operations for which the Philippine Government did grant an equivalent exemption to United States citizens and corporations. Our reasons for this view are stated below.

Although section 231 (d) (1) on its face grants an exemption to the earnings from both coastwise and international shipping operations, in actual practice only international operations have benefited from the provision. The principle expressed in section 231 (d) (1) of the 1939 Code was first enacted by the Revenue Act of 1921 as section 213 (b) (8) thereof. Previously, however, Congress had enacted the Merchant Marine Act of 1920 which prohibited the transportation of merchandise in the coastwise trade of the United States "on penalty of forfeiture" in other than "a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States." 46 U. S. C., sec. 883. This prohibition is still in effect. Congress did not provide for the registry of Philippine vessels as vessels of the United States. Thus, American coastwise shipping was barred to ships of Philippine registry which might otherwise have benefited with respect to coastwise shipping from the exemption provided in section 231 (d) (1) of the 1939 Code. See 48 U. S. C., sec. 1015, and 46 U. S. C. (1940 and 1946 eds.), sec. 877. We have no doubt that Congress fully understood that only international shipping operations would, as a practical matter, be affected by its enactment of the exemption.

Respondent argues that we should examine only the tax laws of the two governments, and urges that maritime provisions are not material to the construction of the Internal Revenue Code. We disagree. It has long been the rule that provisions, such as section 231 (d) (1), which are enacted to give relief from double taxation and to facilitate foreign operations of American companies are to be in-

terpreted in order to give effect to their general purpose as intended by Congress. Cf. *Burnet* v. *Chicago Portrait Co.*, 285 U. S. 1 (1932). In the instant case, the maritime laws of the United States are material to the consideration of the practical result intended by the Congress which first enacted the exemption provision. In order to deal with the practical problems of taxation in a practical way, we must determine what shipping operations were effectively exempted from taxation by section 231 (d) (1) before we can determine whether or not other laws have the effect of granting an exemption which is equivalent thereto.

In the case before us, we conclude that the substance of section 231 (d) (1) effectively exempts only international shipping operations because of the existing prohibition in the Merchant Marine Act, *supra*, against coastwise shipping by other than vessels under United States registry. Since the Philippine law likewise exempts earnings arising out of international shipping operations, we hold that the exemptions are equivalent.

We turn now to the issue of whether or not the Commonwealth of the Philippines was a "foreign country" within the meaning of section 231 (d) (1). We are concerned with the status of that Government only from June 10, 1941, to October 21, 1946, which is the period of time during which Act No. 637 was in effect. On and after July 4, 1946, the Republic of the Philippines was a foreign country (see Proclamation No. 2695, 60 Stat. 1352), and we hold accordingly that petitioners' earnings from July 4, 1946, until October 21, 1946, a period of approximately 3½ months, are exempt from taxation as provided in section 231 (d) (1). We hold, however, that prior to July 4, 1946, the Commonwealth was not a "foreign country" within the meaning of the Internal Revenue Code for the reasons expressed below.

The Philippine Archipelago was ceded to the United States pursuant to the Treaty of Peace between this country and Spain signed on December 10, 1898, and proclaimed on April 11, 1899. (30 Stat. 1754.) The subsequent political relationships between the Philippines and the United States were discussed briefly by Mr. Chief Justice Stone in *Hooven & Allison Co.* v. *Evatt*, 324 U. S. 652, 675 (1944), as follows:

On July 1, 1902 Congress provided for a complete system of civil government by the original Philippine Organic Act, c. 1369, 32 Stat. 691. Step by step Congress has conferred greater powers upon the territorial government, and those of the federal government have been diminished correspondingly, although Congress retains plenary power over the territorial government until such time as the Philippines are made independent. This process culminated in the Act of March 24, 1934, c. 84, 48 Stat. 456, providing for the independence of the islands. The adoption by the Philippines and approval by the United

States of a constitution for the Commonwealth of the Philippine Islands, as provided by the Act, have prepared the way for their complete independence.

Prior to their independence in 1946, the Philippines were not considered to be a foreign country for the purposes of enforcing the general tariff laws and the other general laws of the United States. See *Fourteen Diamond Rings* v. *United States*, 183 U. S. 176 (1901), and other cases cited in *Hooven & Allison Co.* v. *Evatt, supra*, at p. 673. On the other hand, the Philippines were not considered to be a "part of the United States" for constitutional purposes, and Congress was not subject to the same limitations when it legislated for the Philippines as it was when it legislated for the United States proper. *Downes* v. *Bidwell*, 182 U. S. 244 (1901); *Hooven & Allison Co.* v. *Evatt, supra*. Petitioners assert that Congress has treated the Philippines as though they were a foreign country for purposes of taxation, and that therefore the phrase "laws of a foreign country" in section 231 (d) (1) was intended by Congress to include the laws of the Philippines. We do not agree.

It is true that the Philippines had a revenue system which was separate and distinct from that of the United States. See sec. 23, Revenue Act of 1916; sec. 5, Revenue Act of 1917; and secs. 261 and 1400, Revenue Act of 1918. It is also true that there were many provisions in our various revenue acts which expressly treated the Philippines, *as a possession*, in the same category with foreign countries. Petitioners, however, have not pointed out (and we are unable to find) any provisions in any revenue act in which the words "foreign country" alone are used to include a possession of the United States. On the contrary, in every instance cited by petitioners, Congress expressly used the terms "possession" *and* "foreign country" whenever it intended to treat the Philippines and foreign countries in the same manner taxwise. (See secs. 131 and 23 (c) (1) (C), Internal Revenue Code of 1939. See also Regs. 111, sec. 29.131–2.) Furthermore, it appears that whenever Congress intended, prior to their independence, to consider the Philippines as a foreign country, or in any respect in a manner different from other possessions of the United States, it expressly so provided. (See secs. 116 (h) and 1621 (a) (5), Internal Revenue Code of 1939.) Since it is obvious that the Philippines were in fact a possession, we are not convinced that the use of the words "foreign country" in section 231 (d) (1) was intended to include such a possession when we find no circumstances which clearly imply that such inclusion was contemplated.

Moreover, we think that there are affirmative indications that Congress did not intend that it be applicable to the Philippines or any other possession of the United States. Section 231 (d) (1) was first enacted as section 213 (b) (8) of the 1921 Revenue Act. That same

Act expressly provided in section 222 (a) thereof for a tax credit for income taxes paid "to any foreign country or to any possession of the United States." Similarly, section 214 (a) (3) of that Act allowed as a deduction taxes paid or accrued except so much of those taxes "imposed by the authority of any foreign country or possession of the United States as is allowed as a credit under section 222." (Similar provisions concerning corporations were contained in sections 234 (a) (3) and 238 (a). Although in most respects these provisions were re-enactments of the existing law (see S. Rept. No. 275, 67th Cong., 1st Sess. (1921), pp. 14, 17, and 19), we believe that they demonstrate (as we would have expected) an awareness on the part of the draftsmen of the 1921 Act not only that possessions of the United States did levy income taxes on American citizens and corporations, but also, when these provisions are considered together with sections 215 (b) and 235 of the Act, that the distinction between a foreign country and a possession of the United States was material and significant. With these concepts evidently in mind, the provisions of the act which granted an exemption to shipping earnings expressly mentioned only the laws of a foreign country, and not those of possessions in general, or the Philippines in particular. Had Congress intended to extend the exemption to Philippine shippers, we believe the necessary language would have been expressed affirmatively, as it was in other provisions referred to above.

A closer examination of section 222 (a) of the Revenue Act of 1921 (reenacted in substantially the same language by section 131 (a) of the 1939 Code and section 901 (b) of the 1954 Code) further supports our view. That section, which provides for a credit for taxes paid to a foreign country or a possession, distinguishes between taxes paid in each category, in part, as follows: Subsection (2) provides for an unconditional credit for income taxes paid to a *possession* by a resident of the United States. Subsection (3), however, provides for a credit for taxes paid to a *foreign country* by an alien resident of the United States only if the foreign country of which the taxpayer is a citizen "allows a similar credit to citizens of the United States residing in such country." The purpose of this provision, like that of the shipping exemption provision, was to avoid double taxation by encouraging other governments to enact similar provisions. *Gentsch* v. *Goodyear Tire & Rubber Co.*, (C. A. 6, 1945) 151 F. 2d 997, 1000; S. Rept. No. 275, *supra*, p. 14. Congress, however, in section 222 of the 1921 Act specifically eliminated any encouragement for a possession to grant a "similar credit" by allowing the credit unconditionally to its citizens who reside in the United States. In other words, the encouragement was extended only to foreign countries. There is no occasion for us here to consider the policy reasons for the distinction. The impor-

tant consideration is that it was consciously made and *affirmatively expressed.*

In the light of the foregoing discussion, it is our view that Congress did not intend the words "foreign country" in section 231 (d) (1) to include the Philippines for the period prior to July 4, 1946. Accordingly, we sustain respondent's determination that petitioners' earnings prior to that date are not exempt from taxation. As already indicated, however, we hold that on that date the Republic of the Philippines became a foreign country which did grant an equivalent exemption to American shippers pursuant to Act No. 637 until its repeal on October 21, 1946. Thus, appropriate adjustments in the determinations made by respondent are required with respect to petitioners' earnings during that period.

The parties have shown a commendable willingness to stipulate all factors material to a correct calculation of the tax consequences of such determinations as this Court may announce. We have no doubt that they are in a position to submit such supplementary stipulation as may be necessary to present the factors relating to the period from July 4, 1946, to October 21, 1946, which become essential to a Rule 50 decision in the light of our Opinion.

Petitioner Nonsuco also assigned as error in the instant case respondent's determination of the estimated functional life of the ship, the M/V *Nonsuco.* This issue has not been pressed by petitioner, and no evidence was introduced with respect thereto at the hearing. We hold, accordingly, that petitioner Nonsuco has not met its burden of proof on this issue and we sustain respondent's determination in respect thereof.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*