**UNITED SHOE MACHINERY CORPORATION v. WHITE, Collector of Internal Revenue.**

**WHITE, Collector of Internal Revenue, v. UNITED SHOE MACHINERY CORPORATION.**

**UNITED SHOE MACHINERY CORPORATION v. NICHOLS, Formerly Collector of Internal Revenue.**

Nos. 3186–3188.

Circuit Court of Appeals, First Circuit.

April 5, 1937.

Claude R. Branch, of Boston, Mass. (Charles Ryan and Choate, Hall & Stewart, all of Boston, Mass., and Edward H. Green and Sullivan & Cromwell, all of New York City, on the brief), for United Shoe Machinery Corporation.

John G. Remey, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for the Collectors.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

These are three appeals in two different cases brought by the Shoe Machinery Company to recover income taxes alleged to have been erroneously exacted from it. The District Court decided the principal claims against the plaintiff; and in both cases the plaintiff has appealed. On one claim judgment for part of the sum claimed was given against the Collector and in that case he also has appealed. The years involved are 1923 to 1926, inclusive, and the statutes are the Revenue Acts of 1921, section 238 (42 Stat. 258),[1] and corresponding sections in the Acts of 1924 and 1926 (43 Stat. 286, 44 Stat. 44).

Two major questions are involved. The first is whether the British income tax on British corporations is under our law a deductible credit for American sharehold-

---

[1] "Sec. 238. (a) That in the case of a domestic corporation the tax imposed by this title, plus the war-profits and excess-profits taxes, if any, shall be credited with the amount of any income, war-profits, and excess-profits taxes paid during the same taxable year to any foreign country, or to any possession of the United States: Provided, That the amount of credit taken under this subdivision shall in no case exceed the same proportion of the taxes, against which such credit is taken, which the taxpayer's net income (computed without deduction for any income, war-profits, and excess-profits taxes imposed by any foreign country or possession of the United States) from sources without the United States bears to its entire net income (computed without such deduction) for the same taxable year. In the case of domestic insurance companies subject to the tax imposed by section 243 or 246, the term 'net income', as used in this

ers in such corporations. The second question is whether the credit for foreign taxes on a foreign subsidiary corporation (the majority of whose stock is owned by an American corporation), allowable under section 238 (e) of the Revenue Act of 1921 (repeated in substance in the Acts of 1924 and 1926), should be brought into the limitation on such credits contained in section 238 (a). There is also a question whether the limitation provision in 238 (e) applies separately to each subsidiary foreign corporation, or should be computed with reference to the aggregate of all dividends from foreign subsidiaries, and of all taxes assessed against them, when a domestic corporation owns more than one foreign subsidiary; and a final question whether the plaintiff made a sufficient claim for refund to entitle it to maintain suit on one of its claims. On the first question the District Judge ruled that the British tax was not a deductible credit; on the second, he ruled that the credits under section 238 (e) were not counted in computing the limitation under section 238 (a).; on the third point he held that the credits should be computed for each foreign subsidiary separately; and on the last point mentioned he ruled that no sufficient claim for refund had been filed.

 Whether the British income tax on British corporations constitutes a tax on the shareholders, for which credit may be taken under our law by an American shareholder in such a corporation, is concededly a difficult and doubtful question. The Commissioner has reversed himself on it. Until 1929 he held such tax to be a deductible credit; and the taxes on the Shoe Machinery Company for the years in question were assessed and collected under that ruling. The disagreement between the Commissioner and the plaintiff, which originally led to the claim for refund and to the present suit, was occasioned by the Commissioner's insistence that credits under 238 (e) should be brought into the limitation under 238 (a). After suit had been brought to recover alleged overpayments due to that ruling, the Commissioner, by an amended answer, set up that nothing was due because he had improperly credited British income taxes as a tax on the dividends received by the plaintiff from its British subsidiary, whereas, in fact, the British taxes did not constitute such a credit. Striking out this credit, there was only a small overpayment, even if the plaintiff's contention, that the credit under (e) was not subject to the limitation in (a), should be upheld. In the District Court the plaintiff recovered judgment for this overpayment amounting to about $2,700, and this led to the Commissioner's appeal, which presents the question as to the correct construction of section 238.

The nature of the British tax has lately been considered in Biddle v. Commissioner (C.C.A.2, December 7th, 1936) 86 F.(2d)

---

subdivision means net income as defined in sections 245 and 246, respectively.

* * *

"(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided, That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited, which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are includ-

ed. The term 'accumulated profits' when used in this subdivision in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; and the Commissioner with the approval of the Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings. In the case of a foreign corporation, the income, war-profits, and excess-profits taxes of which are determined on the basis of an accounting period of less than one year, the word 'year' as used in this subdivision shall be construed to mean such accounting period."

718, in which it was held that the tax was on the dividends, but that it was not "paid by" American shareholders so as to be a deductible credit under our statute. The tax is levied on the profits of a corporation at the "standard" (normal) rate; and the law requires that, when such profits are distributed in the form of dividends, the amount of tax paid by the corporation which is appropriate to the dividend which each stockholder receives, shall be stated to him by the corporation and deducted from the amount which he would otherwise receive. A dividend may be declared "tax free," in which case the stockholder is advised of the amount of tax which has been paid on account of his dividend. It is settled that the tax is on the corporation, and that the corporation in deducting it does not act as agent of the government. Numann v. Commissioner, (1934) A.C. 215.

If this were the whole story, the question would be simple. But the British tax has to be considered in the light of other statutory provisions and of a long history of income taxation in that country. For more than 125 years the basic principle has always been to tax incomes at the source, and this principle is still recognized. British taxation of incomes antedated the wide use of business corporations. Shareholders are still regarded as having interests in the nature of those of partners in a business enterprise. In the British statute a corporation is taxed as "a body of persons." While it is settled that the tax is on the corporation, it is also settled that the amount of tax, appropriate to each share and deducted from the dividends, is to be considered as additional income of the shareholder; it is included in his income for supertax (surtax) purposes; he is referred to in the Income Tax Act of 1918 (the applicable statute) as a "person who has paid by deduction * * * United Kingdom income tax," etc. (section 55 (1) ). If a person who has received dividends makes a claim that his total income was below the taxable minimum, the tax appropriate to his dividends is added to what he in fact received for the purpose of determining his income; and, more significant still, if his income is below the taxable minimum, the amount of tax which was deducted from his dividends is returned to him by the government. Ritson v. Phillips, 131 Law T. 384. If the dividend is paid without deduction for tax, the appropriate amount is added to the shareholder's income for purposes of surtax or relief. In the case of the Ashton Gas Company which by its charter was restricted to dividends not exceeding 10 per cent., it was held that the 10 per cent. must include the appropriate tax and—assuming the tax to be 10 per cent.—only 9 per cent. could be paid. Ashton Gas Co. v. Attorney General, (1906) A.C. 10. The tax is deducted from dividends on preference shares even when there is ample profit from which to pay it, e. g., if the standard tax is 10 per cent., the dividend actually paid on 6 per cent. preferred stock is 10 per cent. less than that amount. The amounts thus deducted from dividends go to reimburse the company for the tax assessed on it. If the profits are made in one tax year, and dividends are declared in another, and the standard rate of tax is not the same in each year, there may be a difference in the amount of tax deducted from that actually paid—the deduction being made at the standard rate for the year in which the dividend is declared. Probably this discrepancy, when one occurs, is not regarded as a matter of much practical importance. It thus appears that, while the tax is assessed against the corporation, it falls and is by law required to fall, on the shareholders. It was said by the English Court of Appeal: "The appellant here pays income tax although the tax is deducted at the source." Warrington, L. J., Brooke v. Commissioners, (1918) 1 K.B. 257, 269. See too Hamilton v. Commissioner, (1931) K.B. 495.

On a question of this sort, which is really one of fact, the Commissioner's determination under which the assessment was made carries very great weight. A subsequent change of position by him against the taxpayer should be sharply scrutinized because of the possibilities of inequality and injustice involved, and not accepted unless his original determination is clearly shown to have been wrong. On this point we reach the same conclusion as that reached in the Biddle Case.

But in the Biddle Case it was held, as has been said, that, although the tax was a tax on the shareholders, it was not "paid by" them within the meaning of our law. We are unable to agree. We see no practical difference between deducting 60 cents as a tax on a $6 dividend (paying the shareholder $5.40), and paying him $6 and assessing a tax on the dividend amounting to 60 cents, *provided the deduction is required by the taxing statute.*

In Shearer v. Commissioner (C.C.A.) 48 F.(2d) 552, relied on in the Biddle Case, there was no requirement in the statute that the excise tax in question should be passed on to the consumer. The distinction seems to us vital. We think that the British tax was a deductible credit.

■ The next question involves the construction of section 238, whether the credit under 238 (e) is in addition to that under 238 (a). The plaintiff claims that it is, and the District Judge so held. The dividends, the tax on which is claimed by the plaintiff as a credit under 238 (a), came from its subsidiary corporation which is within 238 (e). The plaintiff claimed and was allowed a credit under 238 (e), on account of its interest in the subsidiary. It also claimed and was allowed in the original assessment a credit under 238 (a) on account of tax deducted by the British subsidiary from its dividends. As has been said, the original disagreement was whether the credit under 238 (e) was an independent credit not subject to the limitation in 238 (a), or was to be added to the credit allowed under 238 (a) before the limitation therein specified was computed. The plaintiff is thus claiming two deductions with reference to the same identical tax; first under (e) as a tax on the profits of its subsidiary corporation, and again as a tax on the dividends when the profits were distributed by the subsidiary. The money deducted from the dividends goes to reimburse the corporation for the very tax, in respect of which the plaintiff has claimed credit because it was levied on its subsidiary corporation. Such a result can hardly have been intended.

The hearings and the discussion on the floor of the Senate in connection with this limitation do much to clear up the ambiguity in its wording. The proper taxation of American investments abroad was said by Dr. Adams, in his testimony before the Senate Committee, to be "perhaps the most intricate provision in the tax law." (Hearing before Senate Committee on Finance, 67th Congress, 1st Session, pp. 73–74, 388–389.) If the profits made by foreign subsidiaries of American corporations are taxed here as well as abroad, our corporations will be at a great disadvantage in the foreign field. If all foreign taxes imposed on the profits of subsidiaries are allowed as a credit here, then, if the rate abroad is higher than in this country, the allowance of full credit for the foreign taxes would operate to relieve, pro tanto, the domestic income from domestic taxation. This difficulty was apparently not recognized in drafting the Revenue Act of 1918, which allows credit for all foreign taxes. In the administration of that act, the difficulty referred to developed and led to the adoption of the limitation formula in the act of 1921, where it appears for the first time. (For the 1918 Act, section 238 (a), see 40 Stat. 1080. For the Senate discussion see Congressional Record, vol. 61, part 7, 67th Cong., 1st session, p. 7184.) What now appears at 238 (e) was put, in the 1918 act, in the part relating to "Consolidated Returns" where it appears as section 240 (c). 40 Stat. 1082. That section began, "For the purposes of section 238," etc. Nothing can be clearer than that the credit allowed by what is now 238 (e) began as an item in the credits allowed by what is now 238 (a). As has been said, the defect in the 1918 act was corrected in the act of 1921 when the limitation was put into 238 (a). At the same time what had been 240 (c) was transferred into 238 (e). In this transfer the words, "For the purposes of section 238," were dropped out. The appellant emphasizes the words in 238 (a) "the amount of credit taken under this subdivision shall in no case exceed," etc. In the report of the Ways and Means Committee of the House on the 1932 act, it was said: "This reference was incorrect as the credit was really allowed under subsection (a) and subsection (f) (238 (e) ) merely extended the credits under (a)." (House report Number 708, 72nd Congress, First Session, p. 24.) Section 238 (e) does not purport to grant credits. It establishes items of credit, taxes deemed to have been paid, which then become allowable credits under 238 (a). On the wording of the statute, it seems reasonably clear that the credit thus set up constitutes part of the credit which is allowed by 238 (a). When the history of the section is considered, this construction is confirmed.

■ On the third point the plaintiff contends that the limitation on credit under 238 (e) should be computed by lumping all dividends from, and all taxes on, its foreign subsidiaries, treating them for the purposes of credit under this clause as if they constituted a single foreign subsidiary. The short answer to the contention is that the statute plainly contemplates nothing of the sort. It begins, "For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from

which it receives dividends," etc. Later the statute refers to "the accumulated profits of such foreign corporation." It is clear that the clause is written with a single foreign subsidiary in mind. If any general aggregation of dividends and taxes with respect to all foreign subsidiaries of a taxpayer who happened to have several had been in mind, as the plaintiff asserts, such an intention would certainly have been indicated in the wording of the section. We think it clear that the section does not have the meaning contended for by the plaintiff.

On the final point, whether the plaintiff filed a proper claim for refund, we think the District Judge was right. When the point on which a taxpayer disagrees with the Commissioner has been clearly stated in the discussions and was understood by the Department when its ruling was made, the filing of a claim for refund is a mere formality, and the courts are disposed to go as far as possible in holding that the formality has been sufficiently met. But as pointed out in the United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025, objections made to the assessment of a tax are essentially different from a claim to have it refunded after it has been paid. The statute clearly contemplates that some demand for refund shall be made. "No suit or proceeding shall be maintained * * * until a claim for refund or credit has been duly filed with the Commissioner," etc. R.S. § 3226, as amended, Revenue Act 1926, § 1113, 44 Stat. 116 (26 U.S.C.A. §§ 1672–1673). In the present case no such step was taken. That the Commissioner considered and decided the matter without any formal claim before him would be ample ground for holding that a very informal claim was sufficient (Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L. Ed. 253), but it does not estop the government from setting up that no such claim of any sort was made. (Rock Island, A. & L. R. R. Co. v. United States, 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188). We see no escape from the District Judge's conclusion on this point.

The Commissioner's actual assessment for the years in dispute appears to have been correct.

In 3188 (District Court No. 4978), in which judgment was entered for the defendant, the order will be,

The judgment of the District Court is affirmed, with costs.

In 3186 and 3187 (District Court No. 4977), in which a judgment for the plaintiff for $2712.23 was, due to an erroneous interpretation of section 238 (e), entered under count 3 in connection with correct judgments for the defendant on the other three counts, the order will be,

The judgment of the District Court is reversed, and the case is remanded to that court, with instructions to enter a general judgment for the defendant.