The NATIONAL CASH REGISTER COMPANY, a Maryland corporation, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 3188.

United States District Court
S. D. Ohio, W. D.

April 7, 1967.

Philip R. Becker, Charles E. Martin, Dayton, Ohio, for plaintiff.

Roger J. Makley, Asst. U. S. Atty., Dayton, Ohio, for defendant.

## FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

WEINMAN, Chief Judge.

The parties to this action have agreed to submit plaintiff's claim for relief to the Court for judgment on plaintiff's complaint, defendant's answer and a stipulation filed June 6, 1966. That stipulation is now adopted by the Court as its findings of fact.

## FINDINGS OF FACT

1. The plaintiff at all times material to this action was, and is, a Maryland corporation, with its principal place of business in Dayton, Ohio. The plaintiff employs the accrual method of accounting and maintains its books of account and files its tax returns on the basis of the calendar year.

2. The plaintiff timely filed its U. S. Corporation Income Tax Return for its calendar year 1958 with the District Director of Internal Revenue at Cincinnati, Ohio, on June 15, 1959. On its return plaintiff reported an income tax liability for 1958 of $11,337,786.67, of which $7,825,000 had been previously paid to the defendant and of which the balance of $3,512,786.67 was paid to the defendant with the return. On February 10, 1961 the Internal Revenue Service timely assessed against the plaintiff a deficiency of such tax of $855,753.38 and interest thereon of $83,667.22, which deficiency and interest was satisfied by a credit of $61,574.26 allowed to the plaintiff by the defendant on February 15, 1961 and a payment of $877,846.34 by the plaintiff to the defendant on February 24, 1961. On January 11, 1963, the Internal Revenue Service timely assessed against the plaintiff a further deficiency of such tax of $444,133.54 and interest thereon of $100,876.05, which deficiency and interest of $545,-009.59 was paid by the plaintiff to the defendant on December 28, 1962. On May 7, 1964, the defendant refunded to the plaintiff $84,410.73 of the tax and $19,172.20 of the interest which had been assessed against it, and the defendant paid to the plaintiff interest of $8,337.-72 on the amount refunded.

3. On December 26, 1963, the plaintiff timely (with respect to all tax and interest paid by the plaintiff for 1958) filed with the Internal Revenue Service a claim for refund of tax and interest paid by it for 1958. On May 4, 1964, the District Director notified the plaintiff by certified mail that its claim with respect to the issue in this action had

been disallowed. No part of the refund of tax or interest to which the plaintiff would be entitled upon the allowance of its claim with respect to the issue in this action has been paid or credited to the plaintiff by the defendant. Ex. A is a true copy of the claim for refund filed by the plaintiff; but no statement contained in the claim is stipulated to by the parties unless the statement is expressly stipulated to elsewhere in this Stipulation, and the portion of the claim entitled "Claim with respect to Unused Foreign Tax Credit Carrybacks from 1959 and 1960 for Taxes Paid to Certain Other Foreign Countries" has been allowed and is not in issue in this action.

4. At all times during the year 1958 the plaintiff owned all of the voting stock of The National Cash Register Company Limited ("NCR Ltd.") and of The National Cash Register (Manufacturing) Limited ("NCR Mfg."), corporations of limited liability, organized under the laws of, and residents of, the United Kingdom of Great Britain and Northern Ireland ("United Kingdom"). During 1958 these corporations (the plaintiff's United Kingdom subsidiaries) had "total profits" (before payment of the taxes stated in paragraph 5, infra) and "accumulated profits" (total profits less such taxes), in the following amounts:

|  | "Total Profits" | "Accumulated Profits" |
|---|---|---|
| NCR Ltd. | $2,409,564.52 | $1,235,244.93 |
| NCR Mfg. | 3,927,833.75 | 1,886,861.66 |
|  | $6,337,398.27 | $3,122,106.59 |

The amount stated as accumulated profits constituted the subsidiary's "accumulated profits" for 1958 as defined by Section 902(c)(1) of the Internal Revenue Code of 1954 as enacted prior to its amendment in 1960.

5. For the year 1958 the plaintiff's United Kingdom subsidiaries paid the following taxes:

|  | UNITED Kingdom Standard Tax | United Kingdom Profits Tax | Miscellaneous Foreign Income Taxes | Total Tax |
|---|---|---|---|---|
| NCR Ltd. | $ 961,654.96 | $207,583.57 | $5,081.06 | $1,174,319.59 |
| NCR Mfg. | 1,705,578.99 | 335,393.10 | - - - | 2,040,972.09 |
|  | $2,667,233.95 | $542,976.67 | $5,081.06 | $3,215,291.68 |

All of the above taxes constitute "income, war profits, or excess profits taxes" within the meaning of that phrase as used in Sections 901 through 905 of the Internal Revenue Code of 1954. Except for the "Miscellaneous Foreign Income Taxes," all of the above taxes constitute "United Kingdom tax" within the meaning of Article I of the Income Tax Convention of April 16, 1945, between the United States and the United Kingdom (the "Convention"), as amended by the Supplementary Protocol of August 19, 1957; and the above taxes were the only such taxes paid or accrued in 1958 by the plaintiff's United Kingdom sub-

sidiaries. The United Kingdom Standard Tax and United Kingdom Profits Tax were paid by the plaintiff's United Kingdom subsidiaries to the United Kingdom; the "Miscellaneous Foreign Income Taxes" were paid by NCR Ltd. to countries other than the United Kingdom (or the United States), but for the purposes of Section 904 of the Internal Revenue Code of 1954 are deemed to have been paid to the United Kingdom as the country in which NCR Ltd. was incorporated.

6. For the United Kingdom tax year beginning April 6, 1958, the plaintiff's United Kingdom subsidiaries were subject to the United Kingdom income tax and the United Kingdom profits tax. The income tax consisted of a "standard tax" imposed at a flat rate of 38.75% on corporations and individuals and a "surtax" imposed at graduated rates on individuals only. The profits tax was imposed on corporations only at the rate of 10%. Both the standard tax and the profits tax were imposed on a resident corporation's net earnings for the taxable year without deduction of any dividend declared from those earnings; and neither tax was deductible in computing the other.

7. A corporation resident in the United Kingdom could declare dividends in 1958 either "with deduction of standard tax" or "free of standard tax". When a dividend was declared "with deduction of standard tax", the corporation computed the standard tax payable on the declared amount of the dividend at the standard tax rate in effect, when the dividend was declared (even though this rate may have been different than the standard tax rate in effect when the corporation earned the profits being distributed), deducted the computed amount from the declared amount of the dividend, and paid the balance of the declared amount to the shareholder. When a dividend was declared "free of standard tax", the declared amount of the dividend was paid to the shareholder.

8. During 1958 the amount of a dividend received from a United Kingdom corporation could be "grossed up" to an amount which, after deduction from that "grossed up" amount of the standard tax payable on that "grossed up" amount, equaled the amount of the dividend received. The standard tax payable on the "grossed up" amount was known as the standard tax "appropriate to" the dividend received. (Mathematically, the "grossed up" amount equaled the dividend received divided by the percentage by which the applicable rate of the standard tax was less than 100%; the standard tax "appropriate to" the dividend received was the "grossed up" amount less the dividend received. If the dividend received was $d$, and the rate of the standard tax was $r$, the "grossed up" amount of $d$ was $\frac{d}{1-r}$.) When a dividend was declared "with deduction of standard tax", the standard tax "appropriate to" the dividend received by the shareholder was the amount by which the dividend declared exceeded the dividend received by the shareholder; and the dividend declared was the "grossed up" amount of the dividend received. When a dividend was declared "free of standard tax", the standard tax "appropriate to" the dividend was the amount by which the "grossed up" amount of the dividend declared exceeded the dividend declared. The standard tax "appropriate to" a dividend, as described in this paragraph, constituted "the United Kingdom tax appropriate to such dividend" as that phrase was used in paragraph (1) of Article XIII of the Convention, as amended by the Supplementary Protocol of August 19, 1957.

9. During 1958 a shareholder of a United Kingdom corporation was not subject to the assessment of any standard tax on the amount of a dividend received from the corporation, but was subject (in the case of an individual) to the assessment of a surtax on that amount. For United Kingdom tax purposes other than the assessment of the standard tax, the shareholder included in his income the declared amount of a dividend paid "with deduction of stand-

ard tax" and the declared amount "grossed up" of a dividend paid "free of standard tax"; thus, in both cases, the shareholder included in his income the amount which he received from the corporation and the standard tax "appropriate to" that amount.

10. The dividends received by the plaintiff from its United Kingdom subsidiaries in 1958 were declared "free of standard tax". The amount of the dividends declared and received by the plaintiff, their "grossed up" amount, and the standard tax "appropriate to" the dividends were:

| | DIVIDEND Declared and Received | "Grossed Up" Amount | Standard Tax "Appropriate to" Dividend |
|---|---|---|---|
| NCR Ltd. | $1,019,190.01 | $1,663,983.68 | $ 644,793.67 |
| NCR Mfg. | 1,571,981.25 | 2,566,500.00 | 994,518.75 |
| | $2,591,171.26 | $4,230,483.68 | $1,639,312.42 |

The above dividends were received by the plaintiff from sources within the United Kingdom and were includible in the plaintiff's United States taxable income for 1958. The plaintiff received in 1958 from NCR Mfg. other income of $1,693,857.13 from sources within the United Kingdom which was also includible in the plaintiff's United States taxable income for 1958.

11. If the "accumulated profits" for 1958 of the plaintiff's United Kingdom subsidiaries (stated in par. 4, supra) were "grossed up" as if they had been entirely distributed as dividends declared "free of standard tax", their "grossed up" amounts and the standard tax "appropriate to" the accumulated profits would have been:

| | "Accumulated Profits" | "Grossed Up" Amount | Standard Tax "Appropriate to" Accumulated Profits |
|---|---|---|---|
| NCR Ltd. | $1,235,244.93 | $2,016,726.40 | $ 781,481.48 |
| NCR Mfg. | 1,886,861.66 | 3,080,590.47 | 1,193,728.80 |

12. The Cumulative Bulletin, published by the Internal Revenue Service, contains true and complete texts of the Convention, and the Supplementary Protocols thereto, as follows:

| | |
|---|---|
| Convention of April 16, 1945 | 1947–1 Cum. Bull. 209 |
| Supplementary Protocol of June 6, 1946 | 1947–1 Cum. Bull. 217 |
| Supplementary Protocol of May 25, 1954 | 1957–1 Cum. Bull. 665 |
| Supplementary Protocol of August 19, 1957 | 1958–2 Cum. Bull. 1078 |

Article I of the Convention (1947–1 Cum.Bull. 209) provided in 1958 that:

"(1) The taxes which are the subject of the present convention are:

(a) In the United States of America: The Federal income tax-

es, including surtaxes and excess profits taxes (hereinafter referred to as United States tax).

(b) In the United Kingdom of Great Britain and Northern Ireland: The income tax (including

surtax), the excess profits tax and the national defense contribution (hereinafter referred to as United Kingdom tax).

(2) The present convention shall also apply to any other taxes of a substantially similar character imposed by either contracting party subsequently to the date of signature of the present convention * * *"

Article XIII of the Convention, as amended (1958–2 Cum.Bull. 1081), provided in 1958 that:

"(1) Subject to Sections 901 to 905 of the United States Internal Revenue Code as in effect on the 1st day of January 1956, United Kingdom tax shall be allowed as a credit against United States tax. For this purpose (a) the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom tax appropriate to such dividend * * * if the recipient of the dividend * * * elects to include in his gross income for the purposes of United States tax the amount of such United Kingdom income tax."

13. In 1956 the Internal Revenue Service published Revenue Ruling 56–289, the complete text (1956–1 Cum.Bull. 321) of which is:

"Advice has been requested whether a domestic corporation which owned a majority of the stock of a British corporation, including at least 10 percent of the voting stock of such corporation, is entitled to either a deduction under section 164 of the Internal Revenue Code of 1954, or a credit under section 901, for the standard tax appropriate to such dividends paid by the British corporation.

The principal question presented is whether the decision in Mary D. Biddle et al. v. Commissioner, 302 U.S. 573 [58 S.Ct. 379, 82 L.Ed. 431], Ct.D. 1303, C.B. 1938–1, 309, or article XIII(1) of the income tax convention between the United States and the United Kingdom, Treasury Decision 5569, C.B. 1947–2, 100 is applicable with respect to the standard tax on dividends received by a domestic corporation from a British corporation.

The Biddle decision determined that the British standard tax paid by a British corporation is laid not upon the shareholder but upon the British corporation. Accordingly, it was held that although the tax burden of the corporation is passed on to its shareholders, the United States statutes do not take that fact into consideration in ascertaining the tax obligation of the shareholder. These statutes do not treat as taxpayers those upon whom no legal duty to pay the tax is laid. Therefore, on the basis of the Biddle decision, no deduction is allowable to the shareholder under section 23(c) (1) (C) of the Internal Revenue Code of 1939 (now section 164(a) (3) of the Internal Revenue Code of 1954) and no credit is allowable to the shareholder under section 131(a) of the 1939 Code (now section 901(a) of the 1954 Code) for British standard tax paid by corporations.

Under article XIII(1) of the United States—United Kingdom income tax convention, if the shareholder should elect to include in his gross income the amount of the standard tax appropriate to the dividend paid by the British corporation, the shareholder shall be deemed to have paid such tax. Consequently, under the convention, a credit would be allowable to the shareholder under section 901 of the Code for such tax paid. See Rev.Rul. 54–533, C.B. 1954–2, 210. If additional United Kingdom income, war profits, or excess profits taxes not covered by the convention are paid by the British corporation, an additional credit based on such other taxes is allowable to the domestic corporation under section 902, because the domestic corporation owns at least 10 percent of the voting stock of the British corporation.

If the domestic corporation should not elect to treat the standard tax in accordance with article XIII(1) of the convention, the provisions of section 902 would be applicable to both the standard tax and other income, war profits and excess profits taxes paid by the British corporation. Under this section, such taxes would not be included in the shareholder's gross income, but, in accordance with section 902 of the Code, a portion of the taxes paid by the British subsidiary would be deemed to have been paid by the domestic corporation.

Article XIII(1) of the convention with the United Kingdom has no application to the allowance of a deduction to a shareholder for the standard tax paid by a British corporation. Therefore, as held in the Biddle case, the shareholder may not claim a deduction for such tax paid by the corporation."

14. In its 1958 United States income tax return the plaintiff included in its taxable income the amount of $4,230,483.69 consisting of the dividends received from its United Kingdom subsidiaries and the standard tax "appropriate to" such dividends, which together equaled the "grossed up" amounts stated in par. 10, supra. Against the income tax otherwise payable on its taxable income the plaintiff claimed a credit under Section 901 of the Internal Revenue Code of 1954 in the amount of $2,674,625.51 with respect to the taxes (stated in par. 5, supra) which had been paid by its United Kingdom subsidiaries. The amount of the credit was determined by the plaintiff as follows:

(a) Under Article XIII(1) of the Convention, a "direct credit" in the amount of $1,639,312.42 equal to the total standard tax "appropriate to" the dividends which the plaintiff received from its United Kingdom subsidiaries (as stated in par. 10, supra); and

(b) "Indirect credits" in the total amount of $1,035,313.09 computed under Section 902 separately for the taxes paid by each of its United Kingdom subsidiaries according to the following formula:

$$\frac{\text{``grossed up'' amount of dividend}}{\text{subsidiary's ``accumulated profits''}} \times \frac{\text{subsidiary's ``accumulated profits''}}{\text{subsidiary's ``total profits''}} \times \begin{array}{l}\text{taxes paid by}\\\text{the subsidiary}\\\text{less the standard}\\\text{tax ``appropriate}\\\text{to'' the dividend}\end{array}$$

The actual computation of the "indirect credit" for the taxes paid by NCR Ltd. was:

$$\frac{\$1,663,983.68\,[1]}{\$1,235,244.93\,[2]} \times \frac{\$1,235,244.93\,[2]}{\$2,409,564.52\,[2]} \times (\$1,174,319.59\,[3] -$$

$$\$644,793.67)[1] = \$365,677.07$$

The actual computation of the "indirect credit" for the taxes paid by NCR Mfg. was:

$$\frac{\$2,566,500.00\,[1]}{\$1,886,861.66\,[2]} \times \frac{\$1,886,861.66\,[2]}{\$3,927,833.75\,[2]} \times (\$2,019,345.93\,[4] -$$

$$\$994,518.75)[1] = \$669,636.02$$

1. Par. 10, supra.

2. Par. 4, supra.

3. Par. 5, supra.

4. Of the total of $2,040,972.09 taxes paid by NCR Mfg. (Par. 5, supra), $21,626.16 was treated as having been paid in 1959, leaving a balance of $2,019,345.93.

15. If the plaintiff was not entitled to a credit in the amount of $2,674,625.51 as computed in the preceding paragraph, it claims (alternatively) a credit under Section 901 of the Internal Revenue Code of 1954 in the amount of $2,450,065.84 computed as follows:

(a) Under Article XIII(1) of the Convention, a "direct credit" in the amount of $1,639,312.42 equal to the total standard tax "appropriate to" the dividends which the plaintiff received from its United Kingdom subsidiaries (as stated in par. 10, supra); and

(b) "Indirect credits" in the total amount of $810,753.42 computed under Section 902 separately for the taxes paid by each of its United Kingdom subsidiaries according to the following formula:

$$\frac{\text{"grossed up"}\ \text{amount of}\ \text{dividend}}{\text{subsidiary's}\ \text{"accumulated}\ \text{profits"}} \times \frac{\text{subsidiary's}\ \text{"accumulated}\ \text{profits"}}{\text{subsidiary's}\ \text{"total profits"}} \times \begin{array}{l}\text{taxes paid by}\\\text{the subsidiary}\\\text{less standard}\\\text{tax "appropriate}\\\text{to" amount of its}\\\text{"accumulated}\\\text{profits"}\end{array}$$

The actual computation of the "indirect credit" for the taxes paid by NCR Ltd. would be:

$$\frac{\$1,663,983.68\ [1]}{\$1,235,244.93\ [2]} \times \frac{\$1,235,244.93\ [2]}{\$2,409,564.52\ [2]} \times (\$1,174,319.59\ [3]-$$
$$\$781,481.48)[4] = \$271,283.96$$

The actual computation of the "indirect credit" for the taxes paid by NCR Mfg. would be:

$$\frac{\$2,566,500.00\ [1]}{\$1,886,861.66\ [2]} \times \frac{\$1,886,861.66\ [2]}{\$3,927,833.75\ [2]} \times (\$2,019,345.93\ [5]-$$
$$\$1,193,728.80)[4] = \$539,469.46$$

---

16. Upon its audit of the plaintiff's income tax return for 1958, the Internal Revenue Service adjusted the plaintiff's taxable income; and, against the income tax otherwise payable on the plaintiff's taxable income (as adjusted by the Internal Revenue Service), the Internal Revenue Service allowed a credit under Section 901 in the amount of $1,313,539.40 with respect to the taxes which had been paid by the plaintiff's United Kingdom subsidiaries. The Internal Revenue Service disallowed the greater credit claimed by the plaintiff (par. 14, supra) and assessed against the plaintiff a deficiency of income tax (par. 2, supra). The Internal Revenue Service reduced the plaintiff's taxable income (as reported) by the amounts (stated in par. 10, supra) of the standard tax "appropriate to" the dividends which the plaintiff received from its United Kingdom

1. Par. 10, supra.

2. Par. 4, supra.

3. Par. 5, supra.

4. Par. 11, supra.

5. Of the total of $2,040,972.09 taxes paid by NCR Mfg. (par. 5, supra), $21,626.16 was treated as having been paid in 1959, leaving a balance of $2,019,345.93.

subsidiaries, so that the plaintiff's taxable income included only the amounts of the dividends declared and received (as stated in par. 10); and the Internal Revenue Service did not allow any "direct credit" under the Convention. The credit which the Internal Revenue Service allowed was the total of "indirect credits" computed under Section 902 separately for the taxes paid by each of the plaintiff's United Kingdom subsidiaries according to the following formula:

$$\frac{\text{dividend received by plaintiff}}{\text{subsidiary's "accumulated profits"}} \times \frac{\text{subsidiary's "accumulated profits"}}{\text{subsidiary's "total profits"}} \times \text{Total taxes paid by subsidiary}$$

The actual computation of the "indirect credit" for the taxes paid by NCR Ltd. was:

$$\frac{\$1,019,190.01\,[1]}{\$1,235,244.92\,[2]} \times \frac{\$1,235,244.93\,[2]}{\$2,409,564.52\,[2]} \times \$1,174,319.59\,[3] =$$

$$\$496,710.05$$

The actual computation of the "indirect credit" for the taxes paid by NCR Mfg. was:

$$\frac{\$1,571,981.25\,[1]}{\$1,886,861.66\,[2]} \times \frac{\$1,886,861.66\,[2]}{\$3,927,833.75\,[2]} \times \$2,040,972.11\,[3] =$$

$$\$816,829.35$$

17. The credit under Section 901 computed by the Internal Revenue Service as stated in the preceding paragraph resulted in a larger credit (and a smaller tax liability) for the plaintiff for 1958 than if the Internal Revenue Service had included in the plaintiff's taxable income the standard tax "appropriate to" the dividends received by the plaintiff from its United Kingdom subsidiaries, allowed a "direct credit" in the amount of such standard tax under the Convention, and allowed "indirect credits" computed under Section 902 using the formula stated in the preceding paragraph modified by substituting (a) the "'grossed up' amount of the dividend" for "dividend received by plaintiff" and (b) the "taxes other than standard tax paid by subsidiary" for "total taxes paid by subsidiary".

18. The credits under Section 901 claimed by the plaintiff either as in par. 14, supra, or as in par. 15, supra, and the credit allowed by the Internal Revenue Service as in par. 16, supra, are less than the same proportion of the tax against which the credit would be taken which the plaintiff's taxable income from sources within the United Kingdom for the year 1958 bore to its entire taxable income for the year 1958 as required by Section 904 of the Internal Revenue Code of 1954 prior to its amendment in 1960.

1. Par. 10, supra.

2. Par. 4, supra.

3. Par. 5, supra.

Question Presented: May a United States corporate taxpayer which received dividends from its wholly owned United Kingdom subsidiaries and elects, under the United States—United Kingdom Income Tax Convention of 1945, as amended by the Supplementary Protocol of August 19, 1957, (hereinafter referred to as the "Convention") and Section 901, Internal Revenue Code of 1954, to claim a direct foreign tax credit for the United Kingdom standard tax "appropriate to" those dividends also claim an indirect foreign tax credit under Section 902, Internal Revenue Code, for the remaining portion of the United Kingdom standard tax paid by the United Kingdom subsidiaries.

The plaintiff's contentions are 1) that under Article XIII(1) of the Convention, plaintiff had the option of treating the standard tax "appropriate to" the dividends plaintiff received as a withholding tax for which a direct credit could be taken, provided plaintiff included the amount of that tax in income, 2) that, in addition to the aforementioned direct credit, plaintiff is entitled to an indirect credit under Section 902 for taxes "deemed to have been paid" and 3) that in computing the indirect credit plaintiff is entitled to take into account, in addition to the proportionate part of the United Kingdom profits tax, a proportionate part of the standard tax which was paid by United Kingdom subsidiaries but was not claimed, and could not be claimed by plaintiff as a credit under the Convention.

The Government contends that if a direct credit is claimed under the Convention by plaintiff for the standard tax "appropriate to" the dividend received from its United Kingdom subsidiaries, then no part of the standard tax paid by the subsidiaries can be included in the subsidiaries' creditable taxes in the computation of plaintiff's indirect credit under Section 902(a). Conversely, the Government argues that if any part of the standard tax paid by the United Kingdom subsidiaries was included in the subsidiaries' creditable taxes, as a tax paid by the subsidiaries in the computation of an indirect credit under Section 902(a), plaintiff cannot claim a direct credit under the Convention and Section 901(b) for that portion of the subsidiaries' standard tax which was "appropriate to" the dividend received by plaintiff from the subsidiaries.

## DISCUSSION AND CONCLUSIONS OF LAW

This action concerns the interrelationship of the Convention, §§ 901(b) and 902(a) Internal Revenue Code of 1954, and the Supreme Court decision in Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431 (1938).

■ The purpose of foreign tax credit legislation is to prevent double taxation of foreign source income. American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591 (1942); Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587 (1932); Gentsch v. Goodyear Tire & Rubber Co., 151 F.2d 997 (C.A. 6 1945). The theory of the credit is well stated in Owens, The Foreign Tax Credit (Cambridge 1961) at pages 295–296:

"A foreign tax credit system is a unilateral method of eliminating international double taxation of the nationals of a country which taxes its nationals on world-wide income. When United States nationals—citizens, domestic corporations, and residents—receive income from foreign countries, double taxation arises primarily because foreign countries assert tax jurisdiction on the grounds that the source of the income is in the foreign country while the United States asserts jurisdiction on the basis of nationality, i. e., the citizenship [or] residence of individuals and the place of incorporation of corporations, regardless of the source of the income. Since a tax is imposed both by the country of source of the income and the country of nationality, double taxation, or taxation of income by two countries, occurs

* * *. It is clear, however, that if a country which taxes its nationals on income from all geographical sources decides to take unilateral action to relieve double taxation, it can do so only by allowing the country of source of the income the prior claim on that income. A complete shift to the principle of taxation only at source is unnecessary since the 'burden' of double taxation under a tax credit system is deemed to be only the excess taxation occurring when the taxpayer is subjected, because it pays taxes to more than one country, to an aggregate tax rate which exceeds the generally applicable rate of the crediting country. Consequently, the tax credit system is based on two principles: first, that the place of source has the first claim on the taxpayer's income and second, that the crediting country, as the country of nationality, may properly impose an additional tax to the extent income has not already been taxed at its source at a rate as high as that of the crediting country."

The stipulations, which the Court has adopted as its findings of fact, are sufficiently clear with respect to the manner in which the United Kingdom levies and collects taxes and the Court sees no need to amplify those facts.

The Government does not dispute plaintiff's contentions 1 and 2 above but with respect to 3 argues that since a direct credit was claimed for the standard tax "appropriate to" the dividend received from the United Kingdom subsidiaries, no part of the standard tax paid by the subsidiaries could be included in plaintiff's creditable taxes in the computation of its indirect credit under § 902(a).

Prior to Biddle v. Commissioner of Internal Revenue, supra, the Internal Revenue Service treated American shareholders as the party paying the United Kingdom standard tax and allowed the shareholder to claim a direct credit for the tax. In *Biddle*, the Supreme Court held that the United Kingdom standard tax constituted a corporate tax which is imposed on the United Kingdom corporation paying the dividend and was not a tax on the shareholder who was the recipient of the dividend. Accordingly, the shareholder was not permitted to claim a direct credit for the tax.

Because the consequences of *Biddle* were believed to be harsh, the effect of that case was substantially altered by the Convention. Under the Convention, as amended, a recipient of a dividend paid by a United Kingdom corporation could, if he elected as provided for in the Convention, treat the standard tax appropriate to the dividends as if he had paid that tax and could therefore claim a direct credit for it, subject to the limitations of §§ 901–905 of the Internal Revenue Service as in effect on January 1, 1956.

Article XIII of the Convention, as amended, provided, in 1958 that

"(1) Subject to Sections 901 to 905 of the United States Internal Revenue Code as in effect on the 1st day of January 1956, United Kingdom tax shall be allowed as a credit against United States tax. For this purpose (a) the recipient of a dividend paid by a corporation which is a resident of the United Kingdom shall be deemed to have paid the United Kingdom tax appropriate to such dividend * * * if the recipient of the dividend * * * elects to include in his gross income for the purposes of United States tax the amount of such United Kingdom income tax."

The Convention makes no reference to the remaining standard tax, that is, the total standard tax paid by the subsidiary less the standard tax appropriate to the dividend received by plaintiff. Plaintiff therefore contends that the remaining standard tax should be treated as a corporate income tax paid by the United Kingdom corporations and treated in the same manner as the United Kingdom profits tax, the latter being admittedly proper for use in

determining the credit available under § 902.

The Court agrees with plaintiff's contention. Article I of the Convention provides:

"(1) The taxes which are the subject of the present are:

\* \* \* \* \* \*

(b) In the United Kingdom of Great Britain and Northern Ireland: The income tax (including surtax), the excess profits tax and the national defense contribution (hereinafter referred to as United Kingdom tax) \* \* \*"

and Article XIII, as amended provides:

"(1) Subject to Sections 901 to 905 \* \* \* United Kingdom tax shall be allowed as a credit against United States tax. \* \* \*"

The Court does not believe that the Convention contemplated that a part of the standard tax should be excluded from favorable tax treatment as an indirect credit under § 902. Article XIII does not say or imply that only a part of the United Kingdom tax should be allowed as a credit and the Court can find no reason for doing so.

Finally, the case of United Shoe Machinery Corporation v. White, 89 F.2d 363 (C.A. 1 1937) motion to modify denied, 91 F.2d 342 (1937) cert. denied 302 U.S. 768, 58 S.Ct. 478, 82 L.Ed. 596 (1937) relied upon by the Government is not analogous to the instant case. In that case the Court stated "The plaintiff is thus claiming two deductions with reference to the same identical tax \* \* \*." The plaintiff in the instant action is not, as in the foregoing case, attempting to claim an indirect credit with respect to the standard tax "appropriate to" the dividend received, but is limiting the indirect credit to the remaining standard tax for which no direct credit has been claimed.

The Court concludes that the Question Presented as stated on page 939, must be answered "Yes."